SWAMPSCOTT EDUCATION ASSOCIATION & another[1] vs. TOWN
OF SWAMPSCOTT & others.[2]

Essex. February 8, 1984. — May 15, 1984.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Appeal. *Municipal Corporations*, Collective bargaining,
Group insurance. *Insurance,* Group.

A notice of appeal filed within thirty days following the entry of an order
for a declaratory judgment, but prior to the entry of the judgment itself,
was adequate to commence the appellate process where no other party
was in any way prejudiced by the premature filing of the notice of
appeal. [865-866]

A town's obligation as a result of compulsory arbitration and pursuant to
an unappealed court order to pay 99% of the health insurance costs of
its firefighters was not a voluntary assumption of such an obligation,
and thus did not require the town under G. L. c. 32B, § 7A, to make
equal payments on behalf of its other employees during the relevant
years. [866-868]

In the absence of a cooperative effort between a town and a group of bar-
gaining employees to circumvent the provisions of G. L. c. 32B, § 7A,
a town's extension of some benefit to the group in lieu of an increase
in the town's contribution toward that group's health insurance costs
does not violate the equal treatment requirement of c. 32B, § 7A.
[868]

CIVIL ACTION commenced in the Superior Court Department
on October 10, 1979.

The case was heard by *Bennett, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Sandra C. Quinn* for Swampscott Education Association
(*David W. Downes*, for Local 387, International Brotherhood
of Police Officers with her).

[1] Local 387, International Brotherhood of Police Officers.

[2] The board of selectmen, the town treasurer, and the school committee
of Swampscott.

*Harvey F. Rowe, Jr.,* Town Counsel (*Paul J. Sahovey* with him) for the defendants.

WILKINS, J. By unpublished order, the Appeals Court dismissed the plaintiffs' joint appeal on the ground that the plaintiffs' notice of appeal was not seasonably filed and that certain remedial steps taken in the Superior Court were ineffective to enlarge the time for filing a notice of appeal. The Appeals Court, which raised the jurisdictional questions on its own motion, did not mention the notice of appeal that the plaintiffs had filed within thirty days following the entry of an order for a declaratory judgment but prior to the entry of the declaratory judgment itself.

Because the defendants were in no way prejudiced by the premature filing of the notice of appeal, the appeal was properly before the Appeals Court under Mass. R. A. P. 4 (a), as appearing in 378 Mass. 928 (1979). This is the conclusion reached by Federal courts dealing with parallel language in the Federal Rules of Appellate Procedure. See *Yaretsky* v. *Blum,* 592 F.2d 65, 66 (2d Cir. 1979), cert. denied, 454 U.S. 817 (1981); *Dougherty* v. *Harper's Magazine Co.,* 537 F.2d 758, 762 (3d Cir. 1976); 15 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 3915, at 599-600 (1976 & Supp. 1984). Cf. *Williams* v. *Okoboji,* 599 F.2d 238, 239 (8th Cir. 1979) (notice of appeal filed after filing of motion to set aside the judgment adequate to commence appellate process, even where the trial court retained jurisdiction to decide posttrial motion).[3] This court and the Appeals Court have recognized that a decision on the merits should not be avoided on

---

[3] Rule 4 of the Federal Rules of Appellate Procedure, concerning the time for filing of notices of appeal, was changed in 1979 in significant respects. See *Griggs* v. *Provident Consumer Discount Co.,* 459 U.S. 56, 59-61 (1982). This court has not adopted those changes and thus we follow the pre-1979 interpretation of the parallel Federal rule. It happens, however, that, even if the post-1979 Federal rule were applicable to this case, the result would be the same. Except where certain postjudgment motions or motions for a new trial are filed, "a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Fed. R. A. P. 4 (a) (2) (effective August 1, 1979).

the technicality that a premature notice of appeal was or may have been filed, where no other party has been prejudiced by that fact. See *Cole* v. *Westinghouse Broadcasting Co.*, 386 Mass. 303, 306-307, cert. denied, 459 U.S. 1037 (1982); *Hutchinson* v. *Hutchinson*, 6 Mass. App. Ct. 705, 707 (1978). We thus reach the merits of the appeal.

The plaintiffs represent school teachers and police officers in the town of Swampscott (town). They seek a judgment that the town was obliged under G. L. c. 32B, § 7A, to pay 99%, rather than 50%, of their group health insurance premiums from July 1, 1975, through June 30, 1978. Their contention is based on the fact that during those years the town paid 99% of the group health insurance premiums of the town's fire fighters. They contend that it does not matter that the town's payment of 99% of the fire fighters' insurance premiums was made pursuant to compulsory arbitration or a court order. The plaintiffs also argue that the town was obliged to pay a greater proportion of their health insurance premiums than it did during the fiscal year commencing July 1, 1980. We agree with the conclusion of the trial judge, who rejected these contentions.

Swampscott has accepted the provisions of G. L. c. 32B, § 7A, which permits a town to pay more than 50% of the total monthly cost of certain insurance of its employees, such as health insurance. A municipality that has accepted § 7A is obliged to contribute at least 50% of the premium for the group insurance of the employee and his dependents. See *Broderick* v. *Mayor of Boston,* 375 Mass. 98, 99 (1978); G. L. c. 32B, § 7A. If such a governmental unit elects to pay more than 50% of one class of employees' insurance costs, it may not "provide different subsidiary or additional rates to any group or class within that unit." G. L. c. 32B, § 7A, first par.[4] It is this

_____

.[4] The first paragraph of G. L. c. 32B, § 7A, as amended through St. 1973, c. 789, § 1, reads as follows:

"A governmental unit which has accepted the provisions of section ten and which accepts the provisions of this section may, as a part of the total monthly cost of contracts of insurance authorized by sections three and eleven C, with contributions as required by section seven, make payment of a subsidiary or additional rate which may be lower or higher than a premium determined by the governmental unit to be paid by the insured, the

literal mandate of equal treatment for all groups of employees with respect to employer contributions toward insurance costs that led to the dispute in this case. We agree with the trial judge that this mandate applies only if a town has undertaken voluntarily to pay more than 50% of one group of employees' insurance costs.

There is no dispute that the town contributed 99% of the premium cost of the group health insurance provided to its fire fighters from July 1, 1975, through June 30, 1978. During the first year that contribution was made under the direction of a final offer arbitration panel. Under the law then applicable (St. 1973, c. 1078, § 4), the town had no right to reject that decision by town meeting vote. During the second two years, the town made the 99% contribution because a Superior Court judgment stated that the town was obliged to continue to contribute 99% of the premium cost of group health insurance for the fire fighters. The town did not appeal the legality of the arbitration award or the court judgment.

It is now clear from our November, 1978, opinion in *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. 706, 712 (1978), that, if the town had appealed, the arbitration panel's mandate to contribute more toward the fire fighters' health insurance premiums than toward the health insurance premiums of other town employees would have been held to be invalid because it offended the statutory mandate of equal treatment. We reject the plaintiffs' claim that, because the town did not appeal the arbitration panel's award and the court judgment, the town should be treated as having voluntarily agreed, pursuant to G. L. c. 32B, § 7A, to pay 99% of the group health insurance premiums of all its employees during the three relevant years. The arbitration panel decision and the court action involved serious labor disputes. The town officials were justified in deciding not to challenge the panel's award

combination of which shall result in the governmental unit making payment of more, but not less, than fifty per cent of the total monthly cost for such insurance. No governmental unit, however, shall provide different subsidiary or additional rates to any group or class within that unit."

and in not appealing the court order. The town's obligation to pay 99% of the health insurance costs of its fire fighters was not a voluntary assumption of such an obligation so that under G. L. c. 32B, § 7A, the town had to provide equal treatment to all its employees during the relevant years.

The plaintiffs argue that the arrangement entered into between the town and the fire fighters effective July 1, 1980, concealed a continuing agreement to pay 99% of the fire fighters' health insurance premiums and that they should be treated equally.[5] The judge rejected this claim. The plaintiffs argue that the judge's finding that the July 1, 1980, agreement did not continue the 99% contribution arrangement was clearly erroneous. The judge was warranted in concluding that the bargaining process did not involve, as it had in the two prior years, a cooperative effort to circumvent the provisions of G. L. c. 32B, § 7A. In general, if a municipality says to a bargaining group that it will not increase its contribution toward that group's insurance costs but will consider some benefit in lieu of that increase, the extension of that alternative benefit does not raise a valid equality of treatment claim under G. L. c. 32B, § 7A. Similarly, barring a cooperative effort to circumvent § 7A, bargaining leading to a reduction in percentage contributions in exchange for some alternative benefit raises no question of equality under § 7A.

*Judgment affirmed.*

---

[5] The judge ruled in the plaintiffs' favor for the two years, July 1, 1978, through June 30, 1980. He concluded that the terms of the relevant agreement were worked out to achieve the goal of paying 99%, even though explicitly the agreement provided only for a premium contribution of 72.5%. The defendants have not appealed from this ruling.