JANE PARKER ANTHONY vs. WILLIAM W. ANTHONY, JR.

Hampshire.  October 9, 1985. — December 24, 1985.

Present: GREANEY, C.J., PERRETTA, & KASS, JJ.

*Practice, Civil,* Notice of appeal. *Rules of Appellate Procedure. Divorce and Separation,* Modification of judgment, Alimony.

In a divorce case, the former wife's notice of appeal filed prior to disposition of the husband's postjudgment motion under Mass.R.Civ.P. 52(b) to amend the judgment and prior to the effective date of an amendment to Mass.R.A.P. 4(a), making such an appeal a nullity and requiring its dismissal, was adequate to commence the appellate process although the appeal was entered in this court after the effective date of the amendment, where the husband was not prejudiced in any way by the premature filing of the notice of appeal. [300-303]

On appeal from a modification of a divorce judgment reducing the amount of monthly alimony to the former wife, it was held that the judge's findings were sufficient to support his conclusion that there had been a material change of circumstances since entry of the original judgment. [303-305]

An order of a Probate Court judge entered on a complaint for modification of a divorce judgment and captioned "Temporary Order," which modified the divorce judgment by reducing the amount of monthly alimony to the former wife "pending the further order of the Court" and which required the former husband to report to the court any changes in his circumstances, was, in substance, a final judgment. [305-306]

COMPLAINT for divorce filed in the Probate Court for the county of Hampshire on December 9, 1974.

A complaint for modification, filed on September 13, 1983, and a complaint for contempt, filed on October 27, 1983, were heard by *Sean M. Dunphy*, J.

*Judith Kundl* for the plaintiff.

*Charles W. Danis, Jr.*, for the defendant.

KASS, J. William Anthony's complaint for modification of a 1976 divorce judgment, already once modified, was followed in close order by the complaint of his former wife, Jane, for contempt. The Probate Court judge found William to be in contempt, fixed the arrears, and ordered entry of a judgment requiring partial payment. At the same time he found William's economic circumstances to have changed materially and ordered entry of a judgment reducing monthly alimony to $458. Jane has appealed.

1. *Jurisdictional question.* Although neither party raised the issue, we must consider whether, as a jurisdictional matter, we may entertain the appeal. *Litton Business Syss.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981). *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 670 (1984). The judgment of contempt and what we consider to have been (see below) a judgment amending a previous alimony order were entered on May 4, 1984. Within ten days, on May 14, 1984, William filed a motion to alter or amend so much of the judgment of contempt as established William's arrearage.[1] Thereafter, on May 24, 1984, Jane filed a notice of appeal from the contempt judgment (which she thought unduly postponed payment of the bulk of William's arrearage) and on May 31, 1984, she filed a notice of appeal from the judgment of modification. The appeal was entered in this court on February 28, 1985.

Prior to that date, on January 1, 1985, an amendment to Mass.R.A.P. 4(a), promulgated July 20, 1984, had become effective. As amended, rule 4(a) provides that, "A notice of appeal filed before the disposition of [a timely motion to alter or amend a judgment] shall have no effect."[2] The rule further

---

[1] William says the computation of arrearage failed to credit him with partial alimony payments and that the arrearage should have been calculated as $8,600, rather than $11,000.

[2] Under the rule, a notice of appeal is equally without effect if filed prior to disposition of a motion: (1) for judgment under Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974); (2) under Mass.R.Civ.P. 52(b), 365 Mass. 817 (1974), to amend or make additional findings of fact; and (3) for a new trial under Mass.R.Civ.P. 59, 365 Mass. 827 (1974). Note that a motion for relief from a judgment under rule 60(b) does not defer the time for filing a notice of appeal.

provides that "[a] new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above." In its earlier formulation, rule 4(a) had provided simply that the time for filing a notice of appeal would be tolled pending action on any of the designated postjudgment motions. Some confusion resulted on both the State and Federal level about the status of appeals in which the notice of appeal had been filed out of time. For examples see: *Swampscott Educ. Assn.* v. *Swampscott*, 391 Mass. 864, 865-866 (1984); *Hutchinson* v. *Hutchinson*, 6 Mass. App. Ct. 705, 707 (1978); *Yaretsky* v. *Blum*, 592 F.2d 65, 66 (2d Cir. 1979), cert. denied, 454 U.S. 817 (1981); *Dougherty* v. *Harper's Magazine Co.*, 537 F.2d 758, 762 (3d Cir. 1976). The debate about how to regard appeals which proceeded out of time was neither academic nor mechanical; the considerations were practical ones. There was little point in having an appeal work its way up the ladder from a judgment which might be altered. See generally 15 Wright & Miller, Federal Practice and Procedure §§ 3915 (1976 and Supp. 1985) and 16 Wright & Miller, Federal Practice and Procedure § 3950 (1977 and Supp. 1985).

Under the old rule, Federal courts divided whether premature appeals should be dismissed solely by reason of their prematurity or whether a finding of prejudice to the appellee ought to be an indispensible additional basis for dismissal.[3] The Massachusetts courts opted for the latter approach, i.e., the mere fact of a notice of appeal having been filed before disposition of a postjudgment motion under Mass.R.Civ.P. 50(b), 52(b), or 59, would not trigger dismissal of the appeal, unless there were also a showing of prejudice to the appellee. See *Swampscott Educ. Assn.* v. *Swampscott*, 391 Mass. at 865; *Hutchinson* v. *Hutchinson*, 6 Mass. App. Ct. at 707.

---

[3] See, e.g., *Yaretsky* v. *Blum*, 592 F.2d 65 (2d Cir. 1979), cert. denied, 454 U.S. 817 (1981); *Williams* v. *Okoboji*, 599 F.2d 238 (8th Cir. 1979) (both allowing premature appeals where no prejudice found); but see, e.g., *Century Laminating, Ltd.* v. *Montgomery*, 595 F.2d 563, 567 (10th Cir. 1979) (disallowing premature appeal as a "nullity").

The change in the second paragraph of Mass.R.A.P. 4(a) which became effective January 1, 1985, tracks an amendment made to the analogous Federal rule in 1979, and which appears as new Fed.R.A.P. 4(a)(4). Because of a split in the application of rule 4(a)(4) by the Courts of Appeal, the Supreme Court construed the new rule in *Griggs* v. *Provident Consumer Discount Co.*, 459 U.S. 56 (1982). The Court held that the rule as revised meant what it said viz., a premature notice of appeal "shall have no effect," *id* at 61, and that "it is as if no notice of appeal were filed at all." *Ibid.* In so saying the Court quoted Professor Moore's observation that the effect of one or more of the postjudgment motions specified in rule 4(a)(4) was that "[t]he appeal simply self-destructs." 9 Moore's Federal Practice par. 204.12[1], at 4-65 n.17 (2d ed. 1985).

In considering questions arising under rules of procedure patterned on the Federal model, we take guidance from Federal decisions. *Rollins Environmental Serv., Inc.* v. *Superior Court*, 368 Mass. 174, 179-180 (1975). *Albano* v. *Bonanza Intl. Dev. Co.*, 5 Mass. App. Ct. 692, 693-694 (1977). As to all appeals to which new Mass.R.A.P. 4(a) applies we shall give unqualified effect to the language of the new rule, i.e., an appeal founded on a notice of appeal filed prior to disposition of a postjudgment motion under Mass.R.Civ.P. 50(b), 52(b), or 59 is a nullity and shall be dismissed.

It remains to ask whether the old or new rule 4(a) applies in this case. Although Mass.R.A.P. 1B, inserted by 378 Mass. 926 (1979), is a transitional rule which applies to appeals in progress on July 1, 1979, the approach of the transitional rules to deciding whether new or old procedure should be applicable in a particular situation has been applied in a case in which a transitional rule did not apply in a literal sense. See *Snow* v. *E. L. Dauphinais, Inc.*, 13 Mass. App. Ct. 330, 333 (1982). Under Mass.R.A.P. 1B *(1)* & *(2)* and under cases such as *Seibolt* v. *County of Middlesex*, 366 Mass. 411, 412 & nn. 2 & 3 (1974), and *Sheinkopf* v. *Eskin*, 367 Mass. 573, 574-576 (1975), compliance with amended rules of appellate procedure was not required as to appeals claimed and steps taken prior to the effective date of a rule amendment. As a general principle

courts obliged to resolve transitional questions were to interpret and construe the guidelines in rule 1B "in such manner as will, by the exercise of sound judicial discretion, ensure justice." Mass.R.A.P. 1B(5), 378 Mass. 927 (1979).

It would be pointless in this case to dismiss the appeal, claimed when old rule 4(a) still applied, and to put the parties to the burden of starting the proceedings all over again. None of the questions placed by the parties before us for consideration would be affected by disposition of the motion to amend the judgment which is still pending.[4] The appellee suffers no prejudice. Compare *Cole* v. *Westinghouse Bdcst. Co.*, 386 Mass. 303, 307 (1982); *Swampscott Educ. Assn.* v. *Swampscott*, 391 Mass. at 865-866.

2. *The merits.* Whether a spouse shall be held to pay the full measure of a divorce judgment on pain of contempt and whether that judgment should be modified as to future payments involves an essentially similar inquiry, i.e., Has a material change of circumstances occurred since entry of the original judgment? See *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 12-13 (1980); *Binder* v. *Binder*, 9 Mass. App. Ct. 845 (1980). A major aspect of that question is the ability of the obligated spouse to pay. *Ibid.* As to that ability to pay and other significant changes of circumstances, we defer to the trial judge's firsthand evaluation. *Schuler* v. *Schuler*, 382 Mass. 366, 370 (1981). *Heistand* v. *Heistand*, 384 Mass. 20, 26 (1981).

The judge found that at the time of the original divorce judgment, 1976, William was earning a salary of $69,800 as president of the Sign Division of Federal Signal Corporation. That employment ended for reasons not discussed in the record. Around 1978 William found another chief executive position, with Ball and Socket Company, at an annual salary of $50,000, plus a stock package which produced $4,900 per year in dividends. The original 1976 judgment was modified August 8,

---

[4] The pendency of that motion may be more formal than real. William has not pressed his motion and since the lump sum he is required to pay is less than the arrearage, as William seeks to have that arrearage adjusted, the practical consequences to William, in the short run, are minor.

1979, setting alimony at $1,375 per month, a reduction of about $300 per month. Ball and Socket was liquidated in 1983. At that time, William's salary had risen to $63,180. William was close to age sixty when his job wound up and he experienced difficulty in finding a new job. He turned to self-employment as a business consultant but at the time of hearing of the contempt and modification complaints, earnings from that work were meagre.

William had remarried and the second Mrs. Anthony pooled her annual earnings of $14,000 with his. Nonetheless, William had, between August, 1983, and March, 1984, reduced his cash account from $29,943.34 to $3,400. For her part, Jane, the first Mrs. Anthony, lived frugally, earned approximately $10,816, and suffered from a hyperthyroid condition and a bleeding retina. The bulk of her assets were frozen in a home.

The judge was faced with straitened circumstances on both sides. His conclusion that William's situation had materially changed is unassailable. He found William's reduction of income to be temporary and predicted that his earnings ought to increase, either through success as a consultant, or some new employment. Although the judge found that William possessed assets which, if liquidated, could satisfy the entire arrearage, interest, and attorney's fees, the judge opted for some capital retention to launch William on a self-employed or salaried enterprise in which he could earn more money.[5] The engine had to be fueled so that it might run. Compare *Krokyn* v. *Krokyn*, 378 Mass. 206, 210, 214 (1979); *Pagar* v. *Pagar*, 9 Mass. App. Ct. 1, 8 (1980); *Kay* v. *Kay*, 37 N.Y.2d 632, 636 (1975). The judge made it quite clear, in both the contempt and modification judgments, that he would entertain further proceedings to increase alimony and to accelerate payment of arrearage should William's earnings improve. The case is quite unlike *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 821-822

---

[5] Principally, the assets which could have been liquidated consisted of three securities which had a market value of about $122,000. Less than that amount would have been realized on sale because William had a low cost basis in the stock which was the major holding of the three and sales proceeds, therefore, would have been reduced by taxes.

(1985), in which the husband's earnings were substantial and he maintained a high standard of living while his wife was squeezed into comparative penury. Here we have the all too familiar problem of apportioning an inadequate pie.

3. *The "temporary" nature of the alimony judgment.* The document which disposed of the complaint for modification appears on a Probate Court form bearing the caption, "Temporary Order." The order for alimony of $458 per month is made "pending the further order of the Court" and the order requires William to report monthly to the probation office of the court "any changes in his income, earnings, employment, residence, and his efforts to obtain employment."[6] The judge concludes that "the matter of current alimony may be marked by either party or the Probation Office for further hearing at any time."

Jane observes, correctly, that G. L. c. 208, § 37, which authorizes revision of a judgment for alimony or an annual allowance, contemplates the entry of a "judgment" not a "temporary order." Consequently, she argues, the "temporary order" is a nullity and ought to be vacated. In terms of Jane's objectives the argument may prove too much because if the document marked "temporary order" is not a final judgment, it may not be the springboard for an appeal, and Jane's appeal must be dismissed. *Mancuso* v. *Mancuso,* 10 Mass. App. Ct. 395, 396-397 (1980). See G. L. c. 215, § 9, which permits an appeal from an order of a Probate Court to be filed, but not brought forward until final judgment. See the discussion of that statute in *Mancuso* at 398. See and compare *Borman* v. *Borman,* 378 Mass. 775, 778-785 (1979). Finality does not, however, "hinge on the label that is placed on the judge's action." *Id.* at 779 n.8. *Mancuso* v. *Mancuso, supra* at 397. See also *Check* v. *Kaplan,* 280 Mass. 170, 176 (1932), in which a decree termed interlocutory was treated on the basis of its substance as final.

Any judgment of modification under G. L. c. 208, § 37, is subject to further modification, upon the initiative of either

---

[6] The judge left open the possibility that, if nothing came of William's consulting business, he might require application of nonliquid assets to reduction of the alimony arrearage.

party, should the circumstances of the parties undergo further material change. Any judgment of divorce or later judgment of modification reflects the pertinent facts of the time of entry. We do not suggest divorce judgments are ephemeral; changes in circumstances which bring about their alteration must be profound. Here the judge made an order based on extant facts. It was to operate until those facts changed. In leaving the door open to a request for increase in alimony should William's economic situation improve, the judge did no more than state the obvious. In relation to the tight string on which Jane was obliged to operate, any capacity by William to make larger payments would amount to a profound change. We treat the disposition in the alimony case for what it was in substance, a final judgment.

*Judgments affirmed.*