LAURENCE M. ZATSKY vs. LORNA RUTH ZATSKY.

No. 92-P-1299.

Essex. December 6, 1993. - January 31, 1994.

Present: BROWN, KASS, & JACOBS, JJ.

*Divorce and Separation*, Judgment, Findings, Modification of judgment, Child custody, Division of property. *Value. Probate Court*, Appeal, Findings by judge, Judgment. *Practice, Civil*, Appeal, Assembly of record.

In the circumstances of a divorce action in which there was severe delay, not attributable to the parties, between the conclusion of the trial and the time when the appeal was ripe for entry in the Appeals Court (eleven months for entry of findings of fact and judgment, sixteen months more for disposition of postjudgment motions, and seventeen more months for assembly of the record), this court concluded that the interests of the parties would best be served by allowing the judgment to stand; the party whose financial circumstances apparently had changed during the pendency of the appeal was to move for modification of the judgment, which could have retrospective effect. [8-12, 15]

This court expressed its views on measures available to litigants to alleviate unnecessary delays in securing appellate review. [12-13]

In a divorce action no error appeared in the judge's order for custody of the parties' minor children [13] or the division of capital assets [13-14]; the questions of support and legal fees, in light of apparent changed circumstances, were to be addressed in such proceedings for modification as might be brought in future [15].

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on June 19, 1987.

The case was heard by *Mary McCauley Manzi*, J.

*Walter H. McLaughlin, Sr.*, for Laurence M. Zatsky.

*Allen C.B. Horsley* for Lorna Ruth Zatsky.

KASS, J. What the husband particularly presses in his appeal from a divorce judgment is that the time between the conclusion of the trial and when his appeal was ripe for entry in this court was so long — an aggregate forty-four months

— that he was denied due process of law. Obviously, the tortuous progress of this case casts no luster on the judicial system. To a large extent, as the husband's counsel conceded at oral argument, the consequences of the delay are now irretrievable — water over the dam. We think it worthwhile to venture some comments about how judges and parties may at least limit delay as inordinate as that which bedeviled this case. There are several other claims of error by the husband that warrant consideration.

Our conclusion is that the interests of the parties will best be served by allowing the existing judgment to stand, not least because the financial circumstances of the husband appear to have altered substantially since the conclusion of the trial. The appropriate next step for the husband is to petition for modification of the divorce judgment and then to attempt to prove to the satisfaction of a judge that his and his former wife's circumstances are in fact materially altered.

1. *The time delays.* Although the Zatskys lived together for thirteen years, for the last nine their marriage was more than ordinarily troubled. Laurence Zatsky, the husband, brought an action for divorce on June 19, 1987. Lorna Zatsky, the wife, counterclaimed. The case came to trial on December 19, 1988, adjourned after a day to January 3, 1989, and concluded January 6, 1989. Eleven months later, on December 1, 1989, the trial judge issued findings of fact and a judgment issued the same day.

Three postjudgment motions were timely served on December 7, 1989,[1] on behalf of the husband: a motion for a new trial, a motion for relief from judgment, and a motion to stay operation of the judgment pending appeal. The first of those motions, the new trial motion under Mass.R.Dom.Rel.P. 59(a) (1975), served to stay appellate proceedings. The notice of appeal previously filed became a nullity once the rule 59 motion was filed, and Laurence could not file a notice of appeal that would trigger the appellate machinery until the motion for a new trial had been granted

---

[1]According to the docket, the three postjudgment motions were filed in court on December 13, 1989.

Zatsky *v.* Zatsky.

or denied. Mass.R.A.P. 4(a), as amended, 393 Mass. 1239 (1985). *Anthony* v. *Anthony*, 21 Mass. App. Ct. 299, 300-302 (1985). None of the postjudgment motions was acted on until April 10, 1991, sixteen months after service and filing, and they were all denied. Until disposition of the motion for a new trial, the judgment was only semifinal, and the party aggrieved by the judgment, the husband, was thwarted in his ability to appeal from it. He was also hampered in bringing a petition to modify a judgment he desired to attack as erroneous on motion and on appeal. For the litigant there is a tactical dilemma in bringing a proceeding under G. L. c. 208, § 37, to modify a judgment on the basis of materially changed circumstances while also challenging the lawfulness of the underlying judgment. All the same, a complaint to modify under § 37 is an available remedy if a material change in circumstances has already occurred since the time the judgment was entered, i.e., a Probate Court has power to entertain such a complaint. See Kindregan & Inker, Family Law & Practice § 898 (1990). Cf. *Ryan* v. *Ryan*, 371 Mass. 430, 432 (1976). Here the aggrieved party chose to await disposition of the postjudgment motions. By the time the judge acted on the postjudgment motions, an aggregate twenty-seven months had passed since the end of the trial.

During this period of delay, the parties were in a suspended state: the husband could not appeal and the wife's various complaints for contempt were encumbered by uncertainty whether there was a final judgment to be performed. A contempt judgment against the husband did issue on April 6, 1992, i.e., a year after the denial of the husband's motion for a new trial.

After the motion for a new trial was denied on April 10, 1991,[2] the husband, conformably with Mass.R.A.P. 4(a), filed a fresh notice of appeal. Now further unwarranted delay, this time on the part of the register of probate for Essex County, obstructed progress of the case. The record of the Probate Court proceedings was not assembled until Septem-

---

[2]The disposition of the other two postjudgment motions plays no role in the appeal.

ber 18, 1992, a period of seventeen months to accomplish a ministerial act.[3] That lassitude stalled the appeal because the time for docketing the appeal — or entering it — in the appellate court is "[w]ithin ten days after receiving from the clerk of the lower court notice of the assembly of the record." Mass.R.A.P. 10(a)(1), as amended, 378 Mass. 937 (1979).[4] We have thought the outer limit for performing the task of assembling a record in the trial court to be forty days, *Westinghouse Elec. Supply Co.* v. *Healy Corp.*, 5 Mass. App. Ct. 43, 55 n.24 (1977), although adherence to that time limit is not a requirement of maintaining an appeal, *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 273-274 (1978), i.e., a failure to assemble the record within forty days will not trigger dismissal of the appeal. There is no suggestion in the record that the appellant, i.e., the husband, contributed to the delay in assembling the record and his counsel claims to have telephoned and written repeatedly, as well as having made three personal visits to the register's office, to call attention that the record had yet to be assembled.[5] Contrast *Onello* v. *Twomey*, 35 Mass. App. Ct. 671, 677 (1993). If forty days is a yardstick for the maximum time it should take to assemble a record, more than

---

[3]Rule 9(a) of the Massachusetts Rules of Appellate Procedure, as amended, 378 Mass. 935 (1979), requires that the clerk of the lower court assemble the original papers and exhibits in the case "as soon as may be after the filing of the notice of appeal." When the record is fully assembled, the clerk of the lower court notifies the parties and the clerk of the appellate court and, in a civil case, transmits two certified copies of the docket entries. Mass.R.A.P. 9(d), as amended, 378 Mass. 936 (1979). It is the responsibility of the parties and primarily the appellant to reproduce in the record appendix such court documents and exhibits (except those which by reason of their size are permitted by the appellate court to be submitted by a party in original form) as may assist the appellate court in deciding the appeal.

[4]The husband docketed his appeal in the Appeals Court on September 25, 1992.

[5]Unavailability of the stenographic transcript of proceedings, which sometimes, although it need not, holds up notice that the record has been assembled, was not a factor in this case. The transcript of the fifth and last day of trial was completed on March 7, 1990, and the transcript of a post-trial hearing on counsel fees was completed on May 25, 1990.

510 days is unpardonably slow. The public is entitled to better.

Concerning the findings of fact, which took eleven months after trial to emerge, the time standard is in Mass.R.Dom.Rel.P. 52(a), as amended, effective July 1, 1984, which directs[6] that findings of fact and conclusions of law be issued within sixty days of filing the notice of appeal from a judgment pursuant to G. L. c. 208, § 34. The rule does not anticipate what occurred in this case, that no judgment will be entered (thus precluding the filing of a notice of appeal) for a very substantial time, but surely the rule establishes an aspirational goal for a judge not only to accomplish the task of deciding a divorce case but also to make the findings under G. L. c. 208, § 34. See also Mass.R.Dom.Rel.P. 58(a), as amended, effective July 1, 1984, which directs that "[a]ll judgments in cases governed by these rules shall enter within thirty days after completion of trial." Rule 58(a), when observed, acts as a mechanism for tripping the clock under rule 52(a). Eleven months, compounded with sixteen months for the postjudgment motions, is seriously over the target range. We recognize that the heavy traffic in a trial court and shifting assignments which take a judge to different locations may cause a case to be sidetracked. Our purpose is not to scold, nor is that a proper function for this court. It is surely, however, an occasion for dismay and self-examination when a case lingers as long as this one has. As we said in *Mancuso* v. *Mancuso*, 12 Mass. App. Ct. 973, 975 (1981), "Unreasonable delay in explaining the grounds underlying the judgment will, among other consequences, breed disrespect for the judicial process, create unfounded doubts, and exacerbate tensions existing between the parties."

Even if one were to grant that severe delay of itself works a denial of due process, and we do *not* so decide, it would be a useless and self-defeating disposition by an appellate court, assuming an otherwise supportable judgment, to remand the

---

[6]We use the word "directs" advisedly, because the sixty-day requirement is directory rather than mandatory. *Warman* v. *Warman*, 21 Mass. App. Ct. 80, 82-83 (1985).

case to the trial court and, thus, further delay the case coming to a conclusion. *Warman* v. *Warman*, 21 Mass. App. Ct. 80, 82-83 (1985).

2. *How parties may alleviate unreasonable delay.* In this case the subject of what can be done to avoid unreasonable delays falls into two categories: judge delay and clerk delay.

Some reasonable forbearance must be shown by counsel if decisions or findings do not issue from a judge as quickly as one might wish. As we have observed, case load and moving from trial assignment to trial assignment can delay a case. So can peculiar complexities of a case, the pendency of a potentially decisive case in an appellate court, supervening priorities, illness, and weather. If a decision seems overdue, the first step a litigant can take is to make inquiry of the trial judge, directly, or through the register's or clerk's office.[7] The risks that a litigant who does so will incur conscious or unconscious retribution by an offended judge are greatly overstated. A conscientious judge would not be offended. More formal measures are available as next steps. A litigant may make a demand for action with the chief judge of the trial court concerned. That litigant may also petition the Supreme Judicial Court for invocation of its superintendency powers under G. L. c. 211, § 3. Finally, a complaint in the nature of manadamus lies to compel performance of a duty by a judge.

If an appellant experiences delay in assembly of the record, a pragmatic first step is to report the problem to the clerk of the Appeals Court, the court with which the appeal would lodge in the first instance. Often a clerk to clerk (or, in this case, register of probate) communication may produce the desired expedition. The next steps, as in the case of judge delay, would be a request for intervention by the chief judge of the trial court concerned, invocation of the superintendency powers of the Supreme Judicial Court, and manda-

---

[7]Of course, a party may assist the court in the process of decision by submitting suggested findings of fact. When using suggested findings, the trial judge must demonstrate that her or his independent judgment was not suspended. See *Cormier* v. *Carty*, 381 Mass. 234, 237-238 (1980).

mus. A party may also bring a motion before a single justice of the Appeals Court either to compel a clerk or register to assemble a record promptly or to waive assembly of the record as a prerequisite to entering the appeal.

3. *The divorce judgment.* Although there are ten paragraphs in the divorce judgment, it is convenient to think of the judgment as covering four major subjects: (1) custody of minor children; (2) division of capital assets; (3) support payments, including in that category payments for health insurance, life insurance, summer camp, religious education, music lessons and sports activities; and (4) counsel fees.

*Custody.* The judgment provides that Lorna Zatsky, the wife, shall have legal and physical custody of the Zatskys' two minor children. On appeal, the husband objects to exclusion of evidence tending to prove what the husband regards as immoral conduct of the wife, after their marriage was in shambles but before it was legally dissolved. There was evidence that both Zatskys developed relationships with others after their breakup, including evidence that, following the husband's departure from the marital home, the wife began to see the man to whom she is now married, took vacations with him, and allowed him to share her bedroom when he stayed overnight at the former Zatsky marital home.

Assessing the conduct of the parties and deciding what custody arrangments are in the best interests of the children rests in the sound discretion of the probate judge. *Vilakazi* v. *Maxie*, 371 Mass. 406, 409 (1976). *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 616 (1987). There was basis in the evidence to support the judge's findings that the wife had been a nurturing mother, able to subordinate her emotional needs to those of the children, and that the father had made no plans for child care or suitable living quarters. The custody order was sound.

*Division of capital assets.* There were only two substantial capital assets in the marital estate, stock in Access Systems, Inc. (ASI), a closely held company in which the husband owned half of the outstanding stock, and the marital home.

The judge awarded the marital home to the wife and allowed the husband to keep his stock in ASI.

As late as November 30, 1988, the stockholders' equity was carried on the books of ASI at $175,125.32 (it will be recalled that the divorce trial began at the end of December, 1988, and ended during the first week of 1989). The husband himself ascribed a value of $65,000 to his ASI stock on his financial statement. The judge was far from clearly in error in assigning a value of $87,500 to the husband's ASI stock, i.e., half of the stockholders' equity shown on the company's books. That may be a coarse, unsophisticated method of stock valuation, but it is not in all contexts clearly wrong.

The husband is understandably aggrieved that the judge declined to receive evidence that at the time of trial ASI's prospects had changed distinctly for the worse. A customer that was the source of ninety percent of ASI's gross income was apparently changing its distribution methods and cutting off ASI, with which it had a contract cancellable on thirty days' notice. ASI's treasurer, chief financial officer, and other major stockholder, Larry Chutchian, was prepared to speak to this of his own knowledge, but the judge excluded questions addressed to Chutchian, apparently anticipating hearsay. Chutchian should have been allowed to answer, as he would have known if he had received a cancellation notice. It would have been appropriate for the judge to consider whether the company relied peculiarly on business from a particular customer, and whether there was a present understanding on the part of the chief financial officer of ASI that the business had been lost. Obviously information of that sort would bear on what a willing buyer would pay to a willing seller for ASI stock in a free and open market. See *Fechtor v. Fechtor*, 26 Mass. App. Ct. 859, 862-866 (1989).

In the peculiar factual circumstances of this case, the erroneous exclusions of evidence are not an occasion to reverse the judgment. The probate judge made a pragmatic decision to leave the wife with the house, where she had been raising the family, and to leave the husband with what at the time held out some promise of being a cash cow. Whether the

value of the husband's stock were evaluated at $87,500, $65,000, or $30,000, the division of assets reasonably could have been the same. The judge was not required to achieve financial parity between the parties. *Cabot* v. *Cabot*, 18 Mass. App. Ct. 903, 905 (1984). *Johnson* v. *Johnson*, 22 Mass. App. Ct. 955, 956 (1986).

*Support and counsel fees issues.* What the husband should pay for support, insurance, his former wife's legal fees, and so forth is in part a function of what the husband can pay. As to that, it is not contested that the circumstances of Laurence Zatsky have greatly altered. ASI, we are given to understand, has failed and has been dissolved. Laurence experienced some periods of unemployment, although he was employed at the time we heard the appeal. Lorna Zatsky has remarried. Laurence has not made payments to Lorna in accordance with the divorce judgment, but has consistently made some payments.

We affirm the judgment of December 1, 1989, and the denial of the postjudgment motions. That clears the decks for a complaint under G. L. c. 208, § 37, for modification of the judgment on grounds of a material change in circumstances.[8] Any modification may, of course, be made retroactive. *Binder* v. *Binder*, 7 Mass. App. Ct. 751, 760 (1979). The proceedings regarding modification should consider the status of arrearages that have developed over the years between what the judgment appealed from ordered and what the husband has paid. Those proceedings should be before a judge other than the one before whom the trial was conducted, and the subsequent motions were argued.

*Judgment affirmed.*

---

[8]See generally *Knox* v. *Remick*, 371 Mass. 433, 436-438 (1976); *Dennis* v. *Dennis*, 29 Mass. App. Ct. 161, 163 (1990), in both of which, however, the parties had entered into separation agreements. Any modification of the judgment shall take into account the provisions of 42 U.S.C. 666 (a)(9) and G. L. c. 119A, § 13.