COMMONWEALTH vs. YANTAI FISHER.

No. 00-P-1066.

Essex. September 10, 2001. - February 25, 2002.

Present: CYPHER, GILLERMAN, & COHEN, JJ.

*Firearms. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Protective frisk. *Constitutional Law,* Stop and frisk, Delay in appeal. *Due Process of Law,* Delay in appeal.

On a pretrial motion to suppress evidence in an action for possession of a firearm without a license, the judge did not err in concluding that it was appropriate for a police officer to perform a patfrisk of the defendant as a reasonable precaution for the safety of the officers or others who were present on the street, where the aggregated circumstances — the evasive reaction of the defendant and his cohorts to the presence of the police, the fact that the episode took place at a late hour in a high crime area that was known for the presence of illegal firearms, and the defendant's quick motion for his waist — gave the officer a reasonable basis to conduct a protective frisk, even though the individual elements of the situation would not have been enough by themselves to warrant police intervention. [42-47]

The defendant in a criminal action was not denied due process because of a lengthy delay in the preparation of the transcript of proceedings in the District Court, where the delay appeared to have been due more to bureaucratic inattention or ineptitude than to intentional scheming by the Commonwealth, and where the defendant had not shown that his ability to present arguments on appeal had been hindered by the passage of time. [47-48]

This court concluded that the defendant's conviction in a criminal prosecution for possession of a firearm or ammunition without a firearm identification card in violation of G. L. c. 269, § 10(h), must be reversed and the finding of guilt set aside, where there was no evidence that the defendant possessed a firearm or ammunition at his residence or place of business. [48]

COMPLAINT received and sworn to in the Lynn Division of the District Court Department on April 16, 1996.

A pretrial motion to suppress evidence was heard by *Timothy H. Gailey*, J., and the case was heard by *Richard A. Mori*, J.

*Karen Elizabeth Morth* for the defendant.

*Valerie A. DePalma*, Assistant District Attorney, for the Commonwealth.

COHEN, J. During a stop and frisk by the police, the defendant was found to be in possession of a sawed-off rifle, seven individually wrapped bags of marijuana, and a marijuana cigar. In the ensuing criminal proceedings, the defendant's motion to suppress these items was denied by a judge of the District Court. A jury-waived trial was held before a different District Court judge, who found the defendant guilty of possession of a firearm without a license in violation of G. L. c. 269, § 10(*a*); possession of a firearm or ammunition without a firearm identification card in violation of G. L. c. 269, § 10(*h*); and possession of marijuana in violation of G. L. c. 94C, § 34.[1]

The defendant argues on appeal that it was error for the motion judge to deny his motion to suppress, that he was denied due process because of a lengthy delay in the preparation of the transcript of proceedings in the District Court, and that the evidence was insufficient to sustain his conviction under G. L. c. 269, § 10(*h*), as it then existed. On this last point, the Commonwealth concedes, and we agree, that reversal is necessitated by *Commonwealth* v. *Alvarado*, 423 Mass. 266, 267 n.1 (1996).[2] We therefore confine our discussion to the suppression and transcript preparation issues.

1. *The motion to suppress.* When reviewing the trial court's action on a motion to suppress, "we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Sinforoso*, 434 Mass. 320, 321 (2001), quoting from *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997). We also "show substantial deference to the judge's legal conclusions, . . . but

---

[1]Regarding the latter conviction, the defendant had been charged with possession of marijuana with intent to distribute under G. L. c. 94C, § 32C(*a*), but was convicted of the lesser included offense of simple possession. However, "[w]e do not consider the defendant's conviction for possession of [marijuana] as that indictment was placed on file with the defendant's assent, and there are no exceptional circumstances warranting our consideration of his conviction on that indictment. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975)." *Commonwealth* v. *Nutile*, 31 Mass. App. Ct. 614, 615 n.1 (1991).

[2]Prior to its amendment by St. 1998, c. 180, § 69, G. L. c. 269, § 10(*h*) (as appearing in St. 1990, c. 511, § 3), provided that "the mere possession of a firearm, rifle, or shotgun by an unlicensed person not being present in or on his residence or place of business" was not to be prosecuted under that subsection. As in *Alvarado*, there was no evidence here that the defendant possessed a firearm or ammunition at his "residence or place of business."

independently review the application of constitutional principles to the facts" (citation omitted). *Commonwealth* v. *Torres*, 433 Mass. 669, 671-672 (2001). Where, as here, it is evident that the motion judge has found the testifying police officer, who was the sole witness at the hearing, to be entirely credible, we refer not only to the motion judge's findings but also to the officer's uncontroverted testimony supporting those findings. See *Commonwealth* v. *Alvarado*, *supra* at 268 n.2. Compare *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 492 (2001).

With those principles in mind, we summarize the judge's findings and other testimony from the suppression hearing. On April 13, 1996, at about 11:05 P.M., two uniformed officers of the Lynn police department, Officer Paul Holey and his partner, were on patrol in a marked police cruiser. The area in which they were driving was known by Holey to be a so-called "high crime area" where drug and firearms offenses were common. During his three years on the Lynn police force, Holey had responded personally to many gun-related calls in the area. In fact, less than one-half hour earlier, Holey and his partner had been called to assist another police unit in responding to a gun-related call on the same block as the incident involving the defendant.[3]

As the officers drove in the vicinity of Western Avenue and Franklin Street, Holey noticed three men, including the defendant, walking toward the cruiser. The three men looked at the cruiser, then abruptly "did a U-turn" and began walking away at a fast pace. The officers turned down Franklin Street in the same direction that the three men were headed, and pulled the cruiser over to the sidewalk, a few feet away from the defendant. The defendant, who was wearing a jacket that was "zipped down," looked at the officers and made a gesture that Holey first described as "a quick movement with his left hand *to* his waist area," and later characterized as "a quick movement *into* his waist area" (emphases supplied).

Believing that the defendant was reaching for a weapon, Holey immediately got out of the cruiser, approached the defendant and patted him down. The officer detected a hard

[3]There is no suggestion that this call was related in any way to the defendant or his companions.

object in the defendant's waistband and could feel that it had a trigger mechanism. Holey retrieved the object, which was a sawed-off rifle, and placed the defendant under arrest. A further search of the defendant disclosed a quantity of what the officers believed to be marijuana.

A protective frisk of a defendant is justified where an officer reasonably believes the defendant is armed and dangerous. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 (1991). Here, the motion judge determined that Holey had a reasonable belief that the defendant was posing a danger to the police and others by attempting to draw a weapon and that it was therefore appropriate for the officer to approach the defendant and perform an immediate patfrisk. We agree that the aggregated circumstances — the evasive reaction of the defendant and his cohorts to the presence of the police, the fact that the episode took place at a late hour in a high crime area that was known for the presence of illegal firearms, and the defendant's quick motion to his waist — gave Holey a reasonable basis to conduct a protective frisk. We reach this conclusion even though individual elements of the situation would not have been enough to warrant police intervention. "[A] combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief." *Id.* at 545, citing *United States* v. *Sokolow*, 490 U.S. 1, 9-10 (1989). See *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 314 (1992) ("[e]valuation of the propriety of a frisk search . . . involves the whole picture").

We first consider the significance of the attempt by the defendant and his companions to avoid contact with or observation by the police. Although such behavior is not enough standing alone to justify a reasonable suspicion, it may be considered along with other factors. See *Commonwealth* v. *Wren*, 391 Mass. 705, 707-708 & n.2 (1984); *Commonwealth* v. *Moses*, 408 Mass. 136, 140 & n.3 (1990); *Commonwealth* v. *Mercado*, 422 Mass. 367, 371 (1996); *Commonwealth* v. *Grandison*, 433 Mass. 135, 139-140 (2001). In the relatively straightforward circumstances presented in this case, it is a factor deserving of some weight.

Here the defendant and his companions looked at the patrol car and reacted to its presence by suddenly reversing direction and quickly walking away. Thus, the evasion was unprovoked

and "not in reaction to an incursion by the police." *Commonwealth* v. *Harkess*, 35 Mass. App. Ct. 626, 632 (1993). Moreover, it was not simply coincidental: the men turned on their heels after directing their gaze at the patrol car, thus clearly manifesting a motivation to avoid police observation. To be sure, it remained possible that the men's underlying reason for avoiding the police was innocent; but on these facts there is no reason to doubt that, without provocation, the men deliberately sought to evade police presence.[4]

We next consider the character of the neighborhood where the incident took place. Again, this is a factor insufficient in itself to provide reasonable suspicion to justify the patfrisk. See *Commonwealth* v. *Thompson*, 427 Mass. 729, 734, cert. denied, 525 U.S. 1008 (1998). Nevertheless, it is a significant element here, where the evidence went far beyond the routine recitation that the events took place in "a high crime area." The testimony established that the site of the incident was not only an area where there were many drug offenses, but also one where illegal guns were commonly found. As if to underscore that fact, the officers had just been called to assist in responding to a gun-related call a short distance away, on the same block.

Finally, we must take into account the movement that the defendant made after looking at the officers when the cruiser pulled over to the sidewalk. The officer first described this motion as "a quick movement with his left hand *to* his waist area" and later spoke of "a quick movement *into* his waist area" (emphases supplied). While it is not inconceivable that such a gesture could be innocent, it could also be seen as a reflexive action to check that a weapon remained concealed or, more menacingly, as an indication that a weapon was about to be drawn.[5] Given the context in which this potentially dangerous gesture took place, we think that it was objectively reasonable

---

[4]In this respect the present case differs from those relied upon by the defendant, where the suspect's intent to evade was less obvious. See *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 72 (1997) (group including suspect dispersed and walked quickly away as police approached); *Commonwealth* v. *Wright*, 48 Mass. App. Ct. 912, 913 (1999) (suspect put hand in pocket and walked away from police after brief eye contact).

[5]The officer's second formulation — a movement "into" the defendant's waist — is particularly suggestive of a reach for a gun and supportive of the

for the police to take immediate action to resolve the ambiguity. See *Commonwealth* v. *Patti*, 31 Mass. App. Ct. 440, 444 (1991).

This conclusion finds support in the Supreme Judicial Court's instructive decision in *Commonwealth* v. *Barros*, 435 Mass. 171, 172-178 (2001), which held that suppression was required where a firearm and ammunition were discovered during a stop and frisk that was prompted by an anonymous tip that a man similar in appearance to the defendant had been seen taking a handgun from his waistband and showing it to others. The court concluded that the tip, even when coupled with the officer's corroboration of the defendant's identity, did not provide sufficient indicia of reliability for suspecting that the defendant had a handgun and that even if the tip were reliable, the officer still did not have reasonable suspicion that the defendant was doing anything illegal to justify seizure. *Id.* at 176-177. The *Barros* opinion reiterated that carrying a gun is not necessarily a crime and that the mere suspicion that someone is carrying a gun does not confer a basis to stop and frisk.[6] *Ibid.* However, the court also emphasized that where it reasonably appears that a suspect is not only armed but dangerous (as would be the case if he appeared to be reaching for the weapon), a different situation is presented. See *id.* at 178 n.9, citing *Commonwealth* v. *Foster*, 48 Mass. App. Ct. 671 (2000). For that reason, the *Barros* court hypothesized that if the defendant had been seized after he made a gesture toward his waistband rather than as a result of the anonymous tip, the denial of his motion to suppress would have been affirmed, because the officer would have been justified in seizing and frisking the defendant as a reasonable precaution for the officer's own protection. See *Commonwealth* v. *Barros*, *supra* at 173.

The present case is akin to the hypothetical situation distinguished in *Barros*, in that here the defendant's motion to

motion judge's conclusion that the officer reasonably perceived the hand motion to be threatening.

[6]As in *Barros*, the defendant here was not of age to lawfully carry a gun, but there was no evidence at the suppression hearing that he had a youthful appearance. See *Commonwealth* v. *Barros*, 435 Mass. at 179 (Sosman, J., concurring); *Commonwealth* v. *Gunther G.*, 45 Mass. App. Ct. 116, 119 (1998) ("the possession of a firearm by a minor may be viewed as presumptively illegal").

his waist, notwithstanding its inherent ambiguity, tipped the scales in favor of reasonable belief when aggregated with the other nondispositive but relevant factors discussed above. We therefore find no error in the motion judge's conclusion that it was appropriate for the officer to perform a patfrisk of the defendant as a reasonable precaution for the safety of the officers or others who were present on the street. See *Commonwealth* v. *Fraser*, 410 Mass. at 546 (test is whether totality of circumstances gave rise to reasonable belief that officer's safety or that of others was in danger).

2. *The transcript delay.* For due process rights to be implicated as a result of a delay in the appellate process, the defendant must demonstrate that the Commonwealth deliberately blocked his appellate rights or that he was significantly prejudiced by the delay. See *Commonwealth* v. *Alvarez*, 422 Mass. 198, 212-213 (1996). Neither is the case here. The defendant noticed his appeal on October 31, 1996. On March 27, 1997, appellate counsel ordered audiotapes of the suppression hearing, the trial and various pretrial proceedings. Although the transcript of the suppression hearing was prepared in a timely fashion, the tapes of the trial were not located by the clerk's office until August, 1999. They were then promptly transcribed.[7]

As in *Commonwealth* v. *Santos*, 41 Mass. App. Ct. 621 (1996), which involved an even longer wait for the defendant's trial transcripts, the delay here "appears due more to bureaucratic inattention or ineptitude than to intentional scheming by the Commonwealth." *Id.* at 628. Furthermore, the defendant has not shown that his ability to present arguments on appeal has been hindered by the passage of time. See *Commonwealth* v. *Alvarez, supra* at 213. Accordingly, the defendant is not entitled to dismissal of his case on that basis.

That is not to say that the delay in locating the tapes was anything but deplorable. As we have noted previously, there are steps which counsel can take to stimulate action when there has been lengthy delay in the assembly of the record in the lower

[7]Thereafter, the defendant's appellate counsel continued to press for transcripts of pretrial proceedings that were not germane to the appeal. Counsel accepts responsibility for this additional delay.

court. See *Zatsky* v. *Zatsky,* 36 Mass. App. Ct. 7, 12-13 (1994). "[A] pragmatic first step is to report the problem to the clerk of the Appeals Court, the court with which the appeal would lodge in the first instance. Often a clerk to clerk . . . communication may produce the desired expedition."[8] *Id.* at 12. In this case, it was not until August, 1999, that counsel brought the problem to a head by filing a motion in the Appeals Court. Whether by coincidence or because inquiry was made by the Appeals Court clerk, the tapes were then quickly found without the necessity of action by the single justice.

3. *Conclusion.* Regarding the charge of possession of a firearm or ammunition without a firearm identification card in violation of G. L. c. 269, § 10(*h*), the judgment of conviction is reversed, the finding of guilt is set aside, and a judgment shall enter for the defendant. The judgment of conviction for possession of a firearm without a license in violation of G. L. c. 269, § 10(*a*), is affirmed.

*So ordered.*

---

[8]Before resorting to some of the more aggressive measures mentioned in *Zatsky,* counsel may wish to bring delays in transcript preparation to the attention of the judge who heard the case, by filing a motion in the trial court. Counsel are also reminded of the option of proceeding without a transcript under Mass.R.A.P. 8(c), as amended, 378 Mass. 932 (1979), which provides a method for creating a statement of proceedings in cases where a transcript has not been made or is unavailable, or Mass.R.A.P. 8(d), as amended, 378 Mass. 932 (1979), which permits the parties to prepare and sign a statement of the case to be used in lieu of the record on appeal, whether or not a transcript is available.