NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-214

ZHAO RONG[1]

<u>vs</u>.

BAOGANG QIAN.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

The former wife, Zhao Rong, appeals a divorce judgment awarding her sixty percent of the marital estate and twenty-five dollars per week in child support, and awarding the former husband, Baogang Qian, forty percent of the marital estate and general term alimony of $127 per week.  The wife challenges the property division and the alimony award, claiming that the judge (1) made erroneous findings about a certain asset, (2) failed to consider the mandatory factors in the Alimony Reform Act (act), see G. L. c. 208, § 53 (a), and (3) erred in finding she had the ability to pay alimony and in determining the husband's needs that he could not fulfill by working.  We affirm.

---

[1] Also known as Sophia Rong Zhao.

Background.  After a two-day trial at which both parties
testified, the judge made detailed findings of fact under the
following headings:  "Background;" "Length of the Marriage;"
"Age, Health, and Station of the Parties;" "Estate of the
Parties;" "Conduct and Contributions of the Parties;"
"Vocational Skills, Occupation, Employability, and Amount and
Sources of Income;" "Liabilities and Needs of the Parties;"
"Opportunity of the Parties for Future Acquisition of Capital
Assets and Income;" "Amount and Duration of Alimony;" "Present
and Future Needs of the Dependent Children;" "Child Support;"
and "Lost Economic Opportunity as a Result of the Marriage."  We
summarize the judge's findings.

The parties, both scientists in their fifties, had been
married since 1990 when the wife filed for divorce in 2018.  At
the time of trial, their child was a junior in college, lived
with the wife when not in school, and was dependent on the
parties for support, which only the wife provided.  Other than
two years from 2007 to 2009 when the wife was bedridden, the
wife provided primary support and caretaking for the child and
household, and solely did so after May 2015, when the wife
brought an action under G. L. c. 209A and the husband left the
marital home.[2]

_____

[2] Since neither party testified to violence that occurred or
when, the judge found that whatever actions prompted the G. L.

2

The parties enjoyed a middle-class lifestyle during the marriage and owned two properties, a marital home in West Roxbury and an investment property in Dorchester. The judge did not credit the wife's testimony that she alone provided the down payments for these properties or about expenses she incurred in connection with the Dorchester property, which, the judge found, only the wife maintained (both parties maintained the marital home). While the wife was employed and earned $55,016 per year plus rental income from the Dorchester property and was "able to support herself . . . as she ha[d] during the marriage," the husband had been unemployed for many years because of medical issues and was "unable to support himself in the marital lifestyle." Weighing the evidence of the husband's health and employment prospects, including the wife's assertion that the husband was "good for nothing and not sick but a faker and is essentially just lazy," the judge found the husband not fully disabled and capable of working thirty hours per week, earning fifteen dollars per hour. For alimony purposes, he attributed weekly income of $450 to the husband.

The judge decided to award general term alimony of $127 per week after finding that was the amount the husband required to meet his needs and which the wife was able to pay. In assessing

_____

c. 209A action did not rise to the level of abuse provided for in G. L. c. 208, § 31A.

3

the wife's ability to pay, the judge did not credit her claims of several thousand dollars of debt and found some of her listed expenses "overstated." Using the husband's weekly alimony payment from the wife as the husband's income, the judge calculated the presumptive child support payment under the Child Support Guidelines and awarded the wife that amount. Turning to property division, the judge was "persuaded that an unequal division of the marital estate [wa]s equitable" by evidence of the parties' "greatly unequal contributions . . . over the last several years" and the fact that, "[i]f not for the super contribution of Wife, the marital estate would be exponentially smaller." Reasoning that the "[h]usband made substantial financial contributions to support the household and the child from the time of marriage until May 2015" but currently had no income and "quite limited" future ability to acquire assets, however, the judge decided "that a roughly 60/40 division [wa]s appropriate."

The same day that judgment entered, the wife, then acting pro se, (1) noticed an appeal and (2) filed a motion to vacate the asset division and alimony provisions. As there has been no ruling on the motion to vacate, the wife's appeal of the judgment is technically premature. Mass. R. A. P. 4 (a) (2) (C) and (a) (3), as appearing in 481 Mass. 1606 (2019). The husband did not raise a jurisdictional issue, however, and asserted at

4

oral argument that the motion to vacate was waived.  He asked us to affirm on the merits.  Now represented by an attorney, the wife said she was pressing this appeal instead of the motion to vacate.  Since the pendency of that motion appears to be "more formal than real," Anthony v. Anthony, 21 Mass. App. Ct. 299, 303 n.4 (1985), we will exercise our discretion and decide the appeal.  Creatini v. McHugh, 99 Mass. App. Ct. 126, 128 (2021).  See Swampscott Educ. Ass'n v. Swampscott, 391 Mass. 864, 865-866 (1984) ("a decision on the merits should not be avoided on the technicality that a premature notice of appeal was or may have been filed, where no other party has been prejudiced by that fact").

Discussion.  1.  Equitable division.  We review the property division first to determine whether the judge considered all the relevant factors under G. L. c. 208, § 34, and no irrelevant factors, and second to determine whether the judgment was "plainly wrong and excessive" (citation omitted).  Connor v. Benedict, 481 Mass. 567, 578 (2019).  The § 34 factors include the length of the marriage; the parties' conduct during the marriage, ages, health, stations, occupations, amounts and sources of income, vocational skills, employability, estates, liabilities, needs, opportunity for future acquisition of capital assets and income, and contributions in the acquisition, preservation or appreciation in value of estates and as a

homemaker to the family unit; the amount and duration of alimony awarded, if any; and the needs of dependent children.

The judge here considered all these factors and analyzed their application to the facts he found. The wife has not identified any irrelevant factors he relied on, and we see none. The wife only claims that the judge "failed to recognize the disparity far greater than 60/40 in [the] parties' respective contributions to the" Dorchester property, but that is not true. The judge awarded that asset to the wife in recognition of her "greatly unequal contributions." His decision to award the husband some equity was not tied to efforts by the husband in relation to that particular asset, but to the judge's consideration of the § 34 factors and overall conclusion that it was "equitable for Husband to receive a significant amount of marital assets despite his shortcomings over the last several years." We have carefully reviewed the record, and "[w]e cannot say that, having considered the appropriate factors, the judge was 'plainly wrong and excessive' in his distribution." Connor, 481 Mass. at 579.

2. Alimony. "In fashioning an alimony award, '[a] judge must consider and weigh all the relevant factors'" (citation omitted). Cavanagh v. Cavanagh, 490 Mass. 398, 407 (2022).[3]

_____

[3] In Cavanagh, 490 Mass. at 410-411, the Supreme Judicial Court established a three-step methodology in which judges must engage

6

Those factors are "the length of the marriage; age of the parties; health of the parties; income, employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; lost economic opportunity as a result of the marriage; and such other factors as the court considers relevant and material."  G. L. c. 208, § 53 (a).  "'[I]t is important that the record indicate clearly that the judge considered all the mandatory statutory factors,' and that the reason for [his] conclusion is apparent in [his] findings" (citation omitted).  Cavanagh, supra at 408.

The wife claims that the judge failed to consider these factors because he only cited to them once, in a conclusion of law wherein he simply quoted § 53 (a).  As reflected in the headings for the findings and rationale, however and as the wife

_____

"before" deciding whether to award alimony under the act in cases where there will also be a child support order.  The judge here did not engage in that methodology, as Cavanagh was decided after trial and after the wife filed her appellate brief.  The husband's brief contains no reference to Cavanagh and neither party cited it at oral argument.  As a result, any "Cavanagh" argument is thus waived.  Although that case was remanded for the judge to go through the new methodology, we decline to do so here, where no party has raised the issue and, unlike in Cavanagh, supra at 404, this judge did consider the act's mandatory factors and indeed calculated the alimony award before turning to the child support calculation.

7

conceded at oral argument, the judge considered the relevant factors and no "irrelevant" ones. Zaleski v. Zaleski, 469 Mass. 230, 236 (2014). Reading the decision as a whole, we are persuaded that the alimony award "flow[s] rationally from the judge's findings." Hassey v. Hassey, 85 Mass. App. Ct. 518, 526 (2014). In view of the judge's superior position to observe the witnesses and weigh the evidence of the husband's disability and wife's expenses, we cannot say that his "careful balancing of the parties' financial circumstances," Calvin C. v. Amelia A., 99 Mass. App. Ct. 714, 720 (2021), and conclusion that the husband needed alimony the wife was able to pay, was an abuse of discretion. Cavanagh, 490 Mass. at 405. See Murphy v. Murphy, 82 Mass. App. Ct. 186, 193 (2012).

Judgment affirmed.

By the Court (Neyman, Desmond & Smyth, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: April 18, 2023.

---

[4] The panelists are listed in order of seniority.

8