DANIEL F. FINN *vs*. JOSEPH A. MCNEIL, trustee.[1]

Essex. October 15, 1986. — January 8, 1987.

Present: GRANT, KASS, & WARNER, JJ.

*Practice, Civil*, Notice of appeal, Judgment, Appeal, New trial. *Rules of Appellate Procedure. Contract*, Sale of real estate, Construction of contract, Specific performance. *Words*, "Capital improvements."

Where in a civil action judgment was entered in two parts, the first denying relief on count 1 of the complaint, a request for specific performance of a real estate purchase and sale agreement, and the second, under count 2 of the complaint, awarding the plaintiff an amount for labor and materials furnished to the defendant, it was held that Mass.R.A.P. 4 (a) did not require dismissal of the plaintiff's appeal from the judgment on count 1, even though the notice of appeal had been filed prior to the disposition of the plaintiff's motion to amend the second part of the judgment and the defendant's motion for a new trial on count 2. [368-370]

In an action for specific performance of a real estate purchase and sale agreement providing that the stated purchase price of $67,000 was "to be adjusted upward to reflect capital improvements made since the subject was purchased by [Digby Realty] Trust including, but not limited to, 3rd floor plumbing and electric [*sic*]; paving and fence," the trial judge erred in concluding that the agreement was unenforceable because of the vagueness of the purchase price provision. [371-373]

Where the defendant in a civil action moved for a new trial and, on the same day, filed a notice of appeal from the judgment, the motion for a new trial rendered the notice of appeal from the judgment a nullity under Mass.R.A.P. 4 (a). [374]

Where in a civil action seeking money due for labor and materials furnished to the defendant on certain premises the judgment awarded the plaintiff $3,959.94 plus interest, but the record lacked an evidentiary basis for a finding that money was or was not due for the work done by the plaintiff, it was apparent on appeal that the judge had erred in denying the defendant's motion for a new trial. [374]

[1] Trustee of Digby Realty Trust. The judge's findings of fact and the judgment describe McNeil as a party to the litigation in his individual capacity, as well as in his capacity as trustee. The complaint and amended complaint strike against McNeil only in his trustee capacity. Nothing turns on the distinction so far as the appeal is concerned.

CIVIL ACTION commenced in the Superior Court Department on March 30, 1984.

The case was heard by *John L. Murphy, Jr.*, J.

*Mary P. Harrington* for the plaintiff.

*Peter J. Arvanites* for the defendant.

KASS, J. Before we consider the merits of this case, concerning an agreement for the purchase and sale of real property, it is necessary to dispose of a procedural question involving Mass.R.A.P. 4 (a), as amended effective January 1, 1985, 393 Mass. 1239.

1. *The Procedural Question.*

As now in effect, rule 4 (a) extinguishes a notice of appeal from a judgment where the notice of appeal is filed prior to the disposition of a postjudgment motion under Mass.R.Civ.P. 50 (b), 52 (b) or 59, 365 Mass. 814, 817 & 827 (1974). See *Anthony* v. *Anthony*, 21 Mass. App. Ct. 299, 302 (1985); *Blackburn* v. *Blackburn*, 22 Mass. App. Ct. 633, 634-635 (1986). The rule provides that " [a] notice of appeal filed before the disposition of any of the above motions [i.e., one made under rule 50 (b), 52 (b), or 59] shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above."

In the case at bar, the judgment, entered September 3, 1985, consisted of two discrete components which reflected two discrete counts in the plaintiff's amended complaint. The first part of the judgment denied relief on a request for specific performance contained in count 1 of the complaint. The second part of the judgment, directed to count 2 of the complaint, awarded to the plaintiff $3,959.94, plus interest, for labor and materials furnished to the defendant. As to so much of the judgment as denied specific performance, the plaintiff timely (on September 5, 1985) filed a notice of appeal directed to the denial of specific performance. Simultaneously (and next in sequence on the docket), the plaintiff filed a motion to amend that part of "the judgment . . . awarding plaintiff $3,959.94 plus interest and costs." As to that same component of the judgment, i.e., that which dealt with count 2 of the amended

complaint, the defendant on September 11, 1985, moved for a new trial and appealed from that part of the judgment. Both motions, i.e., the plaintiff's motion to amend and the defendant's motion for a new trial, were denied on February 14, 1986. Thereafter, the plaintiff on February 28, 1986, filed a timely notice of appeal from the denial of his motion to amend, and the defendant, on March 5, 1986, appealed from the denial of his motion for a new trial.

The questions arise whether under the amended rule 4(a) and the *Anthony* and *Blackburn* decisions, the original notice of appeal filed by the plaintiff, the one directed to the specific performance issue, was obliterated by the filing of the postjudgment motions and whether, therefore, we are bound to dismiss that appeal. The questions are ones which we have raised on our own motion, as they bear on our jurisdiction to entertain the appeal. See *Litton Business Syss.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981); *Anthony* v. *Anthony*, 21 Mass. App. Ct. at 300.

What underlay the revision of rule 4 (a) was the undesirability of having a case proceed along the appellate path on the basis of a judgment which might be modified. Such a state of affairs was, at best, disorderly and, at worst, it was likely to provoke mischief if a trial court and an appellate court possessed power to modify the same judgment. See *Griggs* v. *Provident Consumer Discount Co.*, 459 U.S. 56, 59-60 (1982).[2] A conflict of that kind can arise in the case of the count 1 component of the judgment. Neither party has made a postjudgment motion concerning the specific performance issue. As to the facts and the law, there is no identity between the count 1 part of the judgment and the count 2 part of the judgment. Nothing which the judge might have done in response to the count 2 postjudgment motions would have altered the nature of the appellate proceedings on the count 1 part of the judgment.

[2] Cf. *Behring Intl., Inc.* v. *Imperial Iranian Air Force*, 712 F.2d 45, 47 n.2 (3d Cir. 1983), in which the court raised, but did not decide, the question whether Fed.R.A.P. 4 (a) (4) and *Griggs* might permit a party to appeal a judgment certified under Fed.R.Civ.P. 54 (b) while the opposing party's rule 59 motion was pending "if the appeal and the motion did *not* raise common legal issues in a shared factual [setting]" (emphasis original).

When the pleaders, as here, have been precise — as Mass.R.A.P. 3 (c), as amended, 378 Mass. 927 (1979), commands them to be — and have placed beyond modification a discrete component of a judgment, involving facts and law distinct from those involved in another component of a judgment, we think it is consistent with the purpose and faithful to the rigor of rule 4 (a) to recognize the discrete notice of appeal as unaffected by the equally discrete motions under Mass.R.Civ.P. 59. There is a difference between rigor and rigidity. We can give "unqualified effect to the language of the new rule," *Anthony* v. *Anthony*, 21 Mass. App. Ct. at 302, and yet acknowledge that the pleader has so differentiated components of the judgment for purposes of appeal that the judgment, as a practical matter, has been fragmented in two. We think it appropriate to look to the substance of the procedural record. See *Lewis* v. *Emerson*, 391 Mass. 517, 520 (1984). Contrast *Harcon Barge Co.* v. *D & G Boat Rentals, Inc.*, 746 F.2d 278, 285 (5th Cir. 1984), in which the one notice of appeal was directed to the entire judgment, without differentiation of any of the components of that judgment.

We have considered in reaching this conclusion in the circumstances of this case a difference in the mechanics of processing an appeal between the Federal system and the Massachusetts system. Under Fed.R.A.P. 11 (b), second par., "When the record is complete for purposes of the appeal, the clerk of the district court shall transmit it forthwith to the clerk of the court of appeals." Thus, if the filing of a postjudgment motion under rule 50 (b), rule 52 (b) or rule 59 does not nullify a previously filed notice of appeal, there is the possibility that the appeal marches inexorably forward and the record upon which the District Court judge is to operate under the posttrial motions will have vanished from the files of the clerk of the District Court and become lodged with the clerk of the Court of Appeals. Under Mass.R.A.P. 9 (a) (as appearing in 378 Mass. 935 [1979]) by contrast, physical possession of the papers remains with the clerk of the trial court. The clerk assembles the record, but retains it "except as the record or any part of it is ordered to be transmitted by the appellate court

or a single justice." *Ibid.* As matter of routine, the only items transmitted to the appellate court in a civil case are a notice of assembly of the record and two certified copies of the docket entries. Mass.R.A.P. 9 (d), as appearing in 378 Mass. 936 (1979). There is no risk, as in the Federal system, that the trial court will lose control of papers pertinent to disposition of postjudgment motions.

On this point this is the opinion of a majority of the panel.

2. *The Merits.*

(a) *The specific performance count.* Finn, the plaintiff, as buyer, and McNeil, the defendant, as seller, on February 16, 1984,[3] entered into a purchase and sale agreement for premises known as 22-24 Chase Street, Beverly. The parties made their agreement on a printed form to which they added several tailor made provisions, one of which said the following about the purchase price of $67,000: "Purchase price is to be adjusted upward to reflect capital improvements made since the subject was purchased by [Digby Realty] Trust including, but not limited to, 3rd floor plumbing and electric [*sic*]; paving and fence." Whatever the imprecision of that language, the parties regarded it as a refinement of an earlier draft which lacked the explanatory phrases starting with the word "including." That earlier draft the seller had rejected as too vague. On the date assigned in the agreement, March 30, 1984, the buyer appeared at the Essex South District registry of deeds for the closing; the seller did not. That apparently came as no surprise to the buyer, who filed a complaint for specific performance before the close of the business day.

The trial judge thought the agreement unenforceable. He reasoned that, as the parties had been unable to agree on what items of work should be included in capital improvements, they had failed to reach a mutual assent on an essential term, the price. Accordingly, he denied specific performance. We are of opinion that the agreement is susceptible to judicial construction and, therefore, enforceable.

---

[3] The trial judge's findings say the agreement was made February 24, 1984, but that appears to be the date upon which the buyer acknowledged receipt of a copy. The agreement, by its own terms, in § 1, is dated February 16, 1984.

Even if an aspect of an agreement is informal, obscure, difficult of satisfactory interpretation, and the subject of dispute by the parties as to its meaning, a court should " [s]o far as reasonably practicable . . . give[ ] a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties." *Bray* v. *Hickman*, 263 Mass. 409, 412 (1928). The judicial bias is towards interpreting a contract "so as to make it a valid and enforceable undertaking rather than one of no force and effect." *Shayeb* v. *Holland*, 321 Mass. 429, 432 (1947). See *Epdee Corp.* v. *Richmond*, 321 Mass. 673, 675 (1947).

In the instant case, the parties fixed the purchase price and added an adjustment clause which prescribed the method by which the adjusted price was to be calculated. Although the adjustment clause, as drafted, is well short of being self-defining, it does not have the flaw of requiring future agreement by the parties. *Shayeb* v. *Holland*, 321 Mass. at 432. Contrast *Lucey* v. *Hero Intl. Corp.*, 361 Mass. 569, 574-575 (1972). There is to be added to the base price the value of "capital improvements." Even without the examples of capital improvements provided in the agreement, or the help of the adjective "capital," the word "improvements" in connection with real estate has acquired decisional gloss. The cases have embraced the dictionary meaning for "improvement," "a permanent addition to or betterment of real property that enhances its capital value . . . and is designed to make the property more useful or valuable as distinguished from ordinary repairs." Webster's Third New Intl. Dictionary 1138 (1971). See *Milligan* v. *Tibbetts Engr. Corp.*, 391 Mass. 364, 368 (1984); *Raffel* v. *Perley*, 14 Mass. App. Ct. 242, 245 (1982); *Mora-San Miguel Elec. Co-op.* v. *Hicks & Ragland Consulting & Engr. Co.*, 93 N.M. 175, 177 (Ct. App. 1979). *Kallas Millwork Corp.* v. *Square D Co.*, 66 Wis. 2d 382, 386 (1975).

The term "capital improvements" is a familiar factor in statutory, administrative and judicial contexts. So, for example, a rent control board must consider "capital improvement of the housing unit as distinguished from ordinary repair, replacement and maintenance." St. 1970, c. 842, § 7 (*b*) (3). See

*Marshal House, Inc.* v. *Rent Control Bd. of Brookline*, 358 Mass. 686, 703 (1971). The Rent Control Board of Cambridge sets application fees for rent adjustment applications, among other criteria, on a percentage of capital improvements. See *Southview Co-op. Housing Corp.* v. *Rent Control Bd. of Cambridge*, 396 Mass. 395, 397 (1985). Courts apply the term capital improvements in cases involving: eminent domain, *Applestein* v. *Boston Redev. Authy.*, 359 Mass. 746 (1971); tax assessment, *Assessors of Brookline* v. *Buehler*, 396 Mass. 520, 531 (1986); partition of real property, *Stylianopoulos* v. *Stylianopoulos*, 17 Mass. App. Ct. 64, 67-69 (1983); application of the statute of repose relating to improvements to real property (G. L. c. 260, § 2B), *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng., Inc.*, 396 Mass. 818, 823 n.3 (1986).

It follows from this sampling that the words "capital improvements" are a workaday phrase in the judicial vocabulary. The words describe betterments of a long lasting nature which add to the capital value of the property, e.g., a new wall rather than a paint job, installation of new windows, rather than repair of the sash cords. In the case at bar, it was the duty of the trial judge to hear evidence as to what improvements of a long lasting, value enhancing nature had been made since the seller had acquired the premises and as to the value in dollars which those improvements added to the premises. That the parties disagreed as to what constituted capital improvements is of no consequence. A mistake of law by a party to a contract is not a ground for avoiding it. *Scirpo* v. *McMillan*, 355 Mass. 657, 660 (1969), and cases cited.

Upon remand for inquiry as to the value of capital improvements and the amount of the adjusted purchase price, it will also be necessary to try the seller's defenses that he was fraudulently induced to sign the purchase and sale agreement, that the buyer had been unprepared, unwilling, and unable to pay the price and so forth. The judge did not reach those issues because he tried the case on a bifurcated basis and resolved the vagueness issue adversely to the plaintiff. Other defenses became academic.

(b) *The work and materials count.* The second count of the amended complaint alleged that the defendant had requested the plaintiff to do certain construction work at 22-24 Chase Street and that the defendant had not paid the plaintiff for his work and materials. It will be recalled that the judgment awarded $3,959.94, plus interest, to the plaintiff and that as to that component of the judgment the defendant filed a notice of appeal and a motion for a new trial. The motion for a new trial rendered the notice of appeal a nullity under Mass.R.A.P. 4 (a). The defendant's notice of appeal, filed March 5, 1986, from the denial of the motion for a new trial does not bring up on appeal the original judgment, but only the correctness of the denial of the motion for a new trial. *Blackburn* v. *Blackburn*, 22 Mass. App. Ct. at 635. We examine that question only.

From the concluding paragraph of his findings it is manifest that the trial judge thought neither the indebtedness nor its amount had been seriously disputed. The judge appears to have forgotten that he had directed the parties to confine their presentation of evidence to that which bore on the purchase price of 22-24 Chase Street. We have examined the record, and there were only the most oblique references to the labor and materials allegedly furnished or their cost. The record lacks an evidentiary basis for a finding that money was or was not due for work done by Finn on the premises. Contrast *Freyermuth* v. *Lutfy*, 376 Mass. 612, 615-620 (1978); *Capitol Bank & Trust Co.* v. *Richman*, 19 Mass. App. Ct. 515, 519 (1985). That is not surprising in view of the removal of the question from the trial agenda. In the circumstances, this is one of those relatively rare instances in which it is apparent on an appellate record that the denial of a motion for a new trial was improvident. See *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 495-497 (1920).

The judgment is reversed. The order denying a motion for a new trial is reversed. The case is remanded to the Superior Court for trial of the question of adjustment, if any, to be made to the purchase price, the defenses raised, and the work and materials claim.

*So ordered.*