Lauriat, J.
The plaintiff, Daniel J. Carey (“Carey”), has brought a complaint for contempt and a separate civil action against the defendant, Frederick J. Conroy (“Con-roy”), alleging, inter alia, civil contempt, fraud, misrepresentation, and violation of G.L.c. 93A. The allegations principally arise out of a settlement agreement which was entered into between Carey and defendant Robert Bray (“Bray”) in Suffolk County Superior Court Civil Action No. 88 6895-E (“the 1988 Action”). Conroy has now moved for summary judgment on both the complaint for contempt filed in the 1988Action and in Suffolk County Superior Court Civil Action No. 935608-E (“the 1993 Action’’). For the reasons which follow, Conroy’s motions for summary judgment are denied.
BACKGROUND
On December 8, 1988, Carey filed a complaint in the 1988 Action alleging that Bray had breached his partnership agreement with Carey. More specifically, Carey alleged that Bray had improperly used partnership funds to enter into a condominium venture and to purchase a one-third interest in the Cliffmont Realty Trust (“Cliffmont”).[1] Carey alleged that Bray, in an attempt to conceal this asset from Carey, was preparing to transfer a portion of his beneficial interest in Cliffmont to his sister, Suzanne Gordon.
On September 16, 1992, a jury returned a verdict in favor of Carey in the amount of $750,000 plus *176 interest and costs. Following the trial, Carey, his attorney Thomas S. Morey (“Morey”), Bray and his attorney Conroy, engaged in settlement discussions. As a result of these discussions, the parties entered into a settlement agreement (“the 1992 Settlement Agreement”). Pursuant to the 1992 Settlement Agreement, Bray agreed to pay Carey $300,000 and to pay Morey $40,000 in legal fees. Bray paid $100,000 to Carey at the closing and agreed to pay $50,000 each year thereafter for a specified term.[2] Bray further agreed to grant Carey a second mortgage on a condominium known as 9 and 9A Gerry Street, Cambridge, Massachusetts (“the Condominium”) in the amount of $220,000 in order to secure the promissory note executed in conjunction with the settlement.
On December 31, 1992, the date of the closing on the 1992 Settlement, Morey learned that there were five junior mortgages on the Condominium. Before closing on the settlement agreement, Morey obtained Conroy’s personal written “guaranty” that he would obtain mortgage discharges on the five junior mortgages and record those discharges in order to secure Carey in second position.[3] The parties then closed on the settlement at the Registry of Deeds. Conroy, Morey, Carey, and Bray were signatories to the 1992 Settlement Agreement.
Conroy admits that, while he obtained the mortgage discharges at or shortly after the closing, he “inadvertently” failed to record them, and instead placed them in his file. (Aff. of Frederick J. Conroy, ¶3.) When Carey’s present counsel, Arthur C. Carmen (“Carmen”), discovered that the mortgage discharges had not been recorded, he notified Conroy of the problem by a letter on August 10, 1993 and telephonically on August 16, 1993. Conroy made no attempt to remedy the problem by recording the mortgages. On August 28, 1993, Carmen sent Bray and Conroy a demand letter pursuant to G.L.c. 93A which stated that Conroy’s failure to record the mortgage discharges constituted an unfair and deceptive trade practice. Conroy also failed to respond to this demand letter.
On October 5, 1993, Carey filed suit against Bray and Conroy alleging, inter alia, fraud, tortious deceit, breach of contract, and violation of G.L.c. 93A. In addition to allegations that Conroy wrongfully failed to record the mortgage discharges, Carey alleged that Conroy misrepresented the value of the Condominium and Cliffmont. On October 12, 1993, Conroy recorded the mortgage discharges.
On February 16, 1994, Carey filed a separate complaint for civil contempt in the 1988 Action, alleging that Bray, Conroy, and others had violated a stipulation executed on December 20, 1988 restraining the disbursement of “any sums of money.. . until further order of this Court.” Carey alleged that Conroy and Bray participated in a scheme whereby Cliffmont was directed by Conroy and Bray to issue checks payable to West Roxbury Roofing Company, Inc. (“WRRC”) for debts purportedly owed by Cliffmont. Bray’s sister, Suzanne Gordon, was the sole officer and shareholder in WRRC. Carey alleged that Conroy then endorsed the WRRC checks and deposited them in Bray’s account. This alleged scheme was designed to deplete Cliffmont’s equity and to funnel the money to Bray in violation of the parties’ stipulation.
On December 14, 1994, Bray and Carey entered into a settlement and compromise (“the 1994 Agreement”) with respect to both the 1988 Action and the 1993 Action. In the 1994Agreement, Carey agreed to the terms set forth in the 1992 Settlement Agreement plus an additional sum of $35,000. Carey also agreed to dismiss five other co-defendants (the ‘Trust defendants”) in the 1988 Action without compensation. Conroy did not participate in these settlement discussions.
Conroy has now moved for summary judgment on both of these actions on the following grounds: (1) that his ultimate recording of the mortgage discharges renders Carey’s claims moot; (2) that, as Bray’s attorney, he owed no duty to Carey; and (3) that the 1994 Settlement Agreement nullifies all of Carey’s claims for damages.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I
Conroy contends that his ultimate recording of the mortgage discharges renders all of Carey’s claims based on his failure to record those discharges moot. The court disagrees.
At the closing, Conroy promised, in writing, to record the mortgage discharges so that Carey would have a second mortgage on the Condominium. The consideration for this promise was Carey’s settlement of the claim. When interpreting a contract, “a court should . . . give! ] a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties.” Finn v. McNeil, 23 Mass.App.Ct. 367, 372 (1987), quoting Bray v. Hickman, 263 Mass. 409, 412 (1928). “The judicial bias is towards interpreting a contract ‘so as to make it a valid and enforceable undertaking rather than one of no force and effect.’ ” Finn, supra at 372, quoting Shayeb v. Holland, 321 Mass. 429, 432 (1947).
The most reasonable interpretation of Conroy’s personal “guaranty” is that he would discharge the mortgages and record the discharges immediately as part of the settlement. As a matter of law, Conroy’s failure to do so constitutes a breach of contract. Accordingly, Carey is entitled to judgment in his favor on Count IV *177 (Breach of Contract) of the 1993 Action. The issue of damages is reserved for a later hearing.
Carey further asserts that Conroy violated G.L.c. 93A, §9 in refusing to record the mortgage discharges when presented with a demand letter. G.L.c. 93A, §2(a) makes unlawful any “(u)nfair . . . acts or practices in the conduct of any trade or commerce.” G.L.c. 93A, §2(a). “(CJonduct ‘in disregard of known contractual arrangements’ and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.” Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991), quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986).
In the present case, even assuming that Conroy’s original delay in recording the mortgage discharges was inadvertent, Conroy knowingly and intentionally disregarded his obligation to record the discharges after he was informed by Carey of the problem in August of 1993. In fact, Conroy failed to make any response to the demand letter at all.[4] Accordingly, the court concludes that Carey is entitled to judgment as a matter of law on Count VIII (violation of G.L.c. 93A) of the 1993 Action.
The court further notes that a plaintiff in a Section 9 case need not show actual loss of money or property, but must show an “injury.” G.L.c. 93A, §9. “Injury,” for the purposes of Section 9, relates to the invasion of the legal right created by Chapter 93A to be free from unfair or deceptive trade practices. G.L.c. 93A, §2(a); Leardi v. Brown, 394 Mass. 151, 159 (1985). Even when an “injury” is not quantifiable in a dollar amount, the statute provides for an award of $25 nominal damages. G.L.c. 93A, §9(3). Accordingly, the fact that Carey may only be able to prove nominal damages is not fatal to his G.L.c. 93A claim. He is also entitled to recover his reasonable attorneys fees. G.L.c. 93A, §9(4).
II.
Conroy contends that the court should enter summary judgment in his favor on Carey’s negligence claim (Count VII) in the 1993 Action because Conroy, as Bray’s attorney, owed no duty to Carey. See Lamare v. Basbanes, 418 Mass. 274, 276 (1994) (an attorney owes no duly to his or her client’s adversary). Conroy further asserts that Carey’s claims of fraud and misrepresentation (Count I and Count V) in the 1993 Action must fail because Carey cannot demonstrate that his reliance on Conroy’s alleged representations was reasonable.
As Carey asserts, the allegations against Conroy in this case do not involve his representation of Bray in an adversarial relationship with Carey. Rather, the acts to be performed by Conroy arose out of a mutually agreed-upon settlement. “(A]n attorney is not ‘absolutely insulated from liability to nonclients.’ ” Spinner v. Nutt, 417 Mass. 549, 552 (1994), quoting Page v. Frazier, 388 Mass. 55, 65 (1983). “(A]n attorney owes a duty to nonclients who the attorney knows will rely on the services rendered.” Spinner, supra at 552, quoting Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524, cert. denied, 493 U.S. 894 (1989).
In the context of a settlement agreement, there is at least a question of fact raised as to whether Carey’s reliance on Conroy’s representations regarding the mortgage discharges and the value of Bray’s assets was reasonable so as to impose a duty on Conroy to Carey. Accordingly, Conroy’s motion for summary judgment is denied with regard to these claims.[5]
III.
Finally, Conroy contends ’ that Carey’s claims against him are barred by Carey’s execution of the 1994 Settlement Agreement with Bray. Conroy asserts that the 1994 Settlement Agreement reaffirms the terms of the 1992 Settlement Agreement and, therefore, Carey cannot contend that he was damaged by Conroy’s alleged misrepresentations in connection with the 1992 Settlement Agreement.
The complaint for civil contempt filed in the 1988 Action alleges that Bray and Conroy, as joint tortfeasors, participated in a scheme whereby Cliffrnont was directed by Conroy and Bray to make checks payable to WRRC for purported debts owed by Cliffrnont. Carey further alleges that Conroy endorsed the WRRC checks and deposited them in Bray’s account. The complaint filed in the 1993 Action alleges that Conroy, in collusion with Bray, misrepresented the value of Bray’s assets to Carey. Thus, both actions allege that Conroy was a joint tort-feasor in Bray’s scheme to defraud Carey.
G.L.c. 23IB, §4 provides, in relevant part, that:
When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury:
(a) It shall not discharge any of the other tortfeasors from liability for its injury unless its terms so provide: but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater .. ."
G.L.c. 23IB, §4 (Emphasis added.)
The 1994 Settlement Agreement is explicitly limited in its scope to claims against Bray and the ‘Trust” defendants. Under G.L.c. 231B, §4, the 1994 Settlement Agreement with Bray does not operate as a discharge of his alleged joint tortfeasor Conroy. Accordingly, Conroy is not entitled to summaryjudgment on the basis of the 1994 Settlement.[6]
ORDER
For the foregoing reasons, the defendant Frederick J. Conroy’s Motions for Summary Judgment in Suffolk Superior Court Action 88 6895-E and Civil Action 93-5608-E are DENIED. The plaintiff Daniel J. Carey is entitled to judgment in his favor on Count IV (Breach of Contract) and Count VIII (Violation of G.L.c. 93A) of Suffolk County Superior Court Civil Action No. 93- *178 5608-E. The issue of damages is reserved for an assessment hearing.

Cliffmont was allegedly created for the purpose of buying land for the erection of condominium units in the West Roxbury/Hyde Park section of Boston, Massachusetts.

Bray defaulted on all subsequent payments.

The first mortgage on the Condominium was held by Bay State Federal Savings Bank.

Although the court addresses solely the issue of liability in this memorandum, we note that a plaintiff is entitled to multiple damages when the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated G.L.c. 93A, §2. Heller v. Süverbranch 376 Mass. 621, 627 (1978).

Count II of the 1993 Action requests the court to compel the discharge of the mortgages. This count is rendered moot by Conroy’s recording of the mortgage discharges on October 12, 1993.

The court notes that Bray has not obtained court approval of the 1994 Settlement Agreement. Consequently, if Conroy is determined to be liable, he may seek contribution from Bray. G.L.c. 23 IB, §3.