Lauriat, J.
On May 6, 1997, Massachusetts LNG Incorporated (“Mass. LNG”) commenced the present action against Industrial National Leasing Corporation (“INLC”) for declaratory relief under a written lease entered into between the parties (Count I), violation of G.L.c. 93A (Count II), and breach of the implied covenant of good faith and fair dealing (Count III). INLC filed a counterclaim for declaratory judgment under the lease (Counts I & II), unjust enrichment (Count III), breach of lease (Count IV), breach of the implied covenant of good faith and fair dealing (Counts v. & VI), violation of G.L.c. 93A (Count VII), and injunctive relief (Count VIII). The parties are nowbefore the court on INLC’s motion for partial summary judgment on Mass. LNG’s complaint and Count I of INLC’s counterclaim. For the following reasons, INLC’s motion is allowed.
BACKGROUND
On June 1, 1972, the parties entered into a lease agreement (the “Lease”) by which INLC agreed to lease to Mass. LNG two leasehold estates, which were comprised of two properties in Lynn and Salem, Massachusetts (the “Leased Properties”). Under the Lease, Mass. LNG would pay rent in fifty semiannual installments from July 1, 1972 until Januaiy 1, 1997.
Under Paragraph 6(c) of the Lease, Mass. LNG was required to cause the Leased Properties to comply with all applicable legal requirements, including any which required structural or extraordinary changes, for the use to which the Leased Properties were to be put. The use to which the Leased Properties have been put throughout the Lease has been the operation of the liquefied natural gas facilities.
Paragraph 17(f) of the Lease provided:
If the Lessee is required to make modifications, alterations or additions (“Modifications”) to the Leased Properties in ■ accordance with subparagraph 6(c) and Lessee determines that the cost of such Modifications exceeds $3,000,000, then the Lessee may, upon 50 days’ written notice, purchase the Leasehold Estate with respect to which such Modifications are required to be made, or both Leasehold Estates, as the case may be, at a purchase price equal to the Stipulated Loss Value [(“SLV”)] thereof determined, subject to the provisions of this paragraph 17, in accordance with Schedule C, and in such event this Lease shall terminate with respect to such Leasehold Estate or both Leasehold Estates, as the case may be.
In calculating the SLV, Schedule C provides that
as of any Rent Payment Date an amount [shall be] determined by multiplying Lessor’s Cost for the Lynn Leased Property and/or the Salem Leased Property ... by the percentage specified in Schedule C-l. . . . ‘Stipulated Loss Value’ for any other date shall mean the Stipulated Loss Value for such Property or Properties as of the next succeeding Rent Payment Date . . . less an amount equal to interest at the rate of 8V4% per annum on the outstanding balance.
Schedule C-1 sets forth an SLV for the second through the fiftieth rental periods, from Januaiy 1, 1973 through Januaiy 1, 1997. Schedule C-l does not contain an SLV for the period covering the last six months of the lease, ending June 30, 1997.
Paragraph 18(e) provides that Mass. LNG
shall have the option, from and after the twentieth Rent Payment Date hereunder, upon at least 60 days’ prior written notice to Lessor, to purchase both Leasehold Estates and to terminate this Lease as of the next succeeding Rent Payment Date (the ‘Termination Date”) occurring at least 120 days after such notice (for the purpose of this subparagraph only, the last day of this Lease shall be deemed to be a Rent Payment Date), at a purchase price equal to the greater of (i) the fair market sales value ... of both Leasehold Estates or (ii) the stipulated loss values of such Leasehold Estates, both determined as of the Termination Date.
Between 1975 and 1995, Mass. LNG performed modifications, alterations, and additions to the premises which it alleges were necessaiy in order to comply with existing laws and regulations. Mass. LNG alleges that the total cost of these modifications exceeded three million dollars. INLC contends that many of the expenses Mass. LNG claims to have incurred were not required by law and are not properly characterized as “Modifications” under the lease. For example, in 1992, Mass. LNG spent $1,955,246.16 on the construction of a dike at the Salem Property. INLC denies that this renovation is an appropriate expense under the lease as Mass. LNG was not required by law to construct the dike. While there is a dispute as to the propriety of some expenses claimed by Mass. LNG, these facts are not material to the court’s ruling on the parties’ rights under the lease.
On December 31, 1996, Mass. LNG sent a letter to INLC stating “we have determined that we wish to acquire the Leasehold Estates and are hereby notifying you of our exercise of one of the options provided under the Lease!,] • • • that provided in subparagraph 17(f) with the purchase taking effect on June 30, 1997.” On Januaiy 6, 1997, INLC responded to this letter by writing: “[INLC] wish[es] to advise you that we *606 do not consider the purchase provision contained in [paragraph 17(f)] to be applicable to an end-of-term purchase by the lessee.”
By letter dated February 24, 1997, Mass. LNG notified INLC of its intent to invoke the purchase option under Paragraph 18(e), notwithstanding Mass. LNG’s belief in the validity of its exercise of the Paragraph 17(f) option. Between January 6 and April 30, 1997, the parties met several times to attempt to resolve their differences and reach an agreeable purchase price. At a meeting on April 21, 1997, INLC presented Mass. LNG with a report which appraised the premises at a value of $44,400,000.
Mass. LNG thereafter commenced this action seeking a declaration that it has “the right to acquire the Leasehold Estates on June 30, 1997 in accordance with Paragraph 17(f) of the Lease and the Notice.” It also alleges that INLC’s refusal, to allow the purchase is a violation of G.L.c. 93A and the implied covenant of good faith and fair dealing. INLC has counterclaimed, in part, for a declaration that “Mass. LNG is not entitled to exercise the Section 17(f) purchase option.”
DISCUSSION Declaratory Judgment
The parties both agree that the lease speaks for itself and that it is a complete and integrated expression of their agreement. This case will thus turn on an interpretation of the contract language, particularly of Paragraph 17(f) and its relation to Schedule C and Paragraph 18(e). The interpretation of a written lease is a question of law for the court. Lexington Ins. Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995) (citations omitted). In interpreting such a lease the court will “so far as reasonably practicable ... give a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties.” Finn v. McNeil, 23 Mass.App.Ct. 367, 372 (1987) (citations omitted). The intention of the parties is to be ascertained by considering all of the lease’s provisions together, and giving the terms used a reasonable meaning in light of the facts to which they apply and the circumstances in which they are used. Wunsch v. Donnelly, 302 Mass. 286, 289 (1939).
In support of its interpretation of the lease, INLC contends that the absence of an SLV in Schedule C for the end of the lease term indicates that Mass. LNG does not have the right to invoke Paragraph 17(f). Mass. LNG, conversely, argues that this omission is inconsequential and that only if the parties had specifically stated that the purchase option was limited in time would INLC’s interpretation be correct. Mass. LNG argues that “the most obvious way to express the concept that the Section 17(f) rights were not in effect during the last six months of the Lease term would have been to so state in Section 17(f).”
In reconciling these divergent views, the court finds instructive the principle of expressio unius est exclusio alterius, the expression of one thing is an implied exclusion of other things. Smart v. Gillette Co. LongTerm Disability Plan, 70 F.3d 173, 179 (1st Cir. 1995). In order to give effect to the Paragraph 17(f) purchase option, the parties agreed upon a mechanism, in Schedule C, for determining the SLV for every day between July 1, 1972 and January 1, 1997. They did not provide such a mechanism for the six month period thereafter.
Mass. LNG contends that the SLV for the end of the lease can easily be determined and has submitted a report which has calculated such an SLV. Notwithstanding the ability to calculate such avalué, the court determines that its omission is determinative of the parties’ intent that it not be in effect as to the Paragraph 17® purchase option. This was a negotiated agreement and the parties certainly could have included such a provision if they had desired.
Mass. LNG also contends that the absence of an SLV for the end of the lease does not mean that the parties did not contemplate that Section 17® would not apply. Mass. LNG relies on Shayeb v. Holland, 321 Mass. 429 (1947), for the proposition that in the absence of a stated purchase price, the parties intend a purchase for a fair and reasonable price. Mass. LNG asserts that the court must adopt Mass. LNG’s interpretation of the Schedule C SLVs in order to make the lease “a valid and enforceable undertaking rather than one of no force and effect.” Finn, 23 Mass.App.Ct. at 372 (citation omitted). This price, Mass. LNG argues, is that which is fairly ascertainable from Schedule C. In support of its position, Mass. LNG has submitted a study from Arthur D. Little which concludes that based upon the prior periods’ SLV, the SLV for the period from January of 1997 until June of 1997 would be $2,300,000.
It is true that in the absence of an essential term in a contract, i.e. the price, the court will imply the price to be a fair and reasonable price. Shayeb, 321 Mass. at 432. Here, however, there is no need for the court to resort to such a gap-filler. The parties have provided the formula for the end of lease pricing in Paragraph 18(e).
Finally, construing the lease as a whole negates the need in Paragraph 17® for any SLV for the last six months of the Lease. Paragraph 18(e) governs the purchase of the premises in the last six months of the lease. A contract’s words should be considered in light of the whole agreement, Video Central, Inc. v. Data Translation, Inc., 925 F.Supp. 867, 872 (D.Mass.1996), and the contract should be construed “so as to give full meaning and effect to all its provisions.” Painewebber, Inc. v. Elahi, 87 F.3d 589, 600 (1st Cir.1996). To create an SLV for the last period of the lease to fit within the structure of Paragraph 17® and Schedule C would render meaningless the procedure *607 the parties negotiated and embodied in Paragraph 18(e).
The court finds the terms of the contract to be unambiguous. The interplay between Paragraphs 17(f) and 18(e) form a complete scheme by which Mass. LNG could purchase the premises. It is clear that while Paragraph 17(f) creates an option to purchase the premises during the lease term, upon its expenditure of more than three million dollars in modifications, Paragraph 18(e) provides the option by which Mass. LNG may purchase the premises after, the final Rent Payment Date, January 1, 1997.
Options are to be construed strictly against the optionee, here, Mass. LNG. Lewis v. Chase, 23 Mass.App.Ct. 673, 676 (1987). It is undisputed that Mass. LNG attempted to exercise its option under Paragraph 17(f) on January 1, 1997, with the purchase taking place on June 30, 1997. As discussed above, however, this option was not available for end of lease term purchases. As Mass. LNG did not exercise its Paragraph 17(f) option within a recognized rental payment period, it lost its contractual right to purchase under Paragraph 17(f) and was left with its rights under Paragraph 18(e).
The court concludes as a matter of law that Mass. LNG may not exercise the Paragraph 17(f) purchase option any time after January 1, 1997. Mass. LNG thus is not entitled to the declaratory relief sought in Count I of its complaint.
Conversely, INLC is entitled to judgment as a matter of law on its request for a declaration that Mass. LNG is not entitled to exercise the purchase option contained in Paragraph 17(f). INLC’s motion for summary judgment on Count I of Mass. LNG’s complaint and Count I of its own counterclaim is allowed.
Violation of Chapter 93A
Mass. LNG contends that INLC’s refusal to acknowledge Mass. LNG’s rights under Paragraph 17(f) violates G.L.c. 93A. Chapter 93A, §11 prohibits unfair methods of competition and unfair or deceptive acts or practices by those engaged in trade or commerce in business transactions with others similarly engaged. In order to constitute a violation of Section 11, a business act or practice must either be within the penumbra of some common-law, statutory or other established concept of unfairness, or must be immoral, unethical, oppressive or unscrupulous. PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). In determining whether a given practice meets these criteria, courts “focus on the nature of the challenged conduct and on the purpose and effect of that conduct.” Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995).
A breach of contract, without more, does not violate Chapter 93A. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101 (1979). However, “conduct ‘in disregard of known contractual arrangements’ and intended to secure benefits for the breaching party will constitute an unfair act or practice for [Chapter] 93A purposes.” Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991). Thus, where one party to an agreement employs a breach of contract as a lever to obtain an unfair advantage over the other, the breach “has an extortionate quality that gives it the rancid flavor of unfairness.” Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992). Finally, it is clear that a breach of the implied covenant of good faith and fair dealing between parties to a contract may constitute an unfair or deceptive act for the purposes of chapter 93A. Anthony’s Pier Four, Inc., 411 Mass. at 476.
Mass. LNG asserts that INLC’s refusal to honor Mass. LNG’s right to exercise the purchase option under Paragraph 17(f) and its insistence that the parties proceed under Paragraph 18(e) constitutes a violation of Chapter 93A. Mass. LNG further argues that INLC’s reasons for this refusal are pretextual and are being used as a “ “wedge’ to force Mass. LNG to give up its right to buy the Leasehold Estates for the Stipulated Loss Value and to pay what INLC claims to be fair market value for the leased premises.”
Parties to a contract are entitled to enforce that contract in accordance with its terms. Shawmut Bank, N.A. v. Wayman, 34 Mass.App.Ct. 20, 23 (1993). As discussed above, Paragraph 17(f)’s purchase option did not include the last six months of the lease. Therefore, it cannot be an unfair or deceptive practice for INLC to fail to allow Mass. LNG to exercise a right which, under the Lease, it did not have. See M/A-Com Security Corp. v. Galesi, 904 F.2d 134 (2nd Cir. 1990) (applying New York law) (parties to a contract are generally entitled to act in their own interest in a way that may incidentally lessen the other party’s anticipated fruits of the contract); cf. Anthony's Pier Four, Inc., 411 Mass. at 474 (defendant’s pretextual withholding of plan approval in order to coerce plaintiff into paying more than the parties’ contract required violated Chapter 93A); Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985) (defendant’s withholding of legally owed payment as extortion to force plaintiff to sell more product to defendant violated Chapter 93A). Thus, as INLC is entitled to judgment as a matter of law, its motion for summary judgment is allowed as to this count.
Violation of the Covenant of Good Faith and Fair Dealing
Mass. LNG alleges that INLC’s refusal to allow Mass. LNG to exercise the rights under Paragraph 17(f) constitutes a breach of the implied covenant of good faith and fair dealing. Every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing which provides “that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony’s Pier Four, Inc., 411 Mass. at 471-72 (citation omitted). Under this covenant, the *608 parties to a contract are obligated to deal with each other honestly and in good faith not only with respect to their performance of the contract, but also in their enforcement of the terms of the contract. Hawthorne’s, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 211 (1993).
Mass. LNG bases its claim upon INLC’s refusal to allow Mass. LNG to purchase the properties pursuant to Paragraph 17(f). As discussed above, Mass. LNG did not have such a right. Thus, in refusing to sell the premises for any amount less than the fair market value, INLC did not injure any right of Mass. LNG to receive what it had bargained for, i.e. the right to purchase the properties at a time within the last six months of the Lease term for a price determined under Paragraph 18(e). Summary judgment is therefore appropriate and INLC’s motion is allowed.
Attorneys fees
INLC asserts that under terms of the Lease, it is entitled to recover attorneys fees and other expenses it incurred in connection with its efforts to prevent Mass. LNG from attempting to exercise the Paragraph 17(f) purchase option. The court will not award attorneys’ fees or expenses at this time, however.
Under Paragraph 13(a)(ii) Mass. LNG agreed to pay all attorneys fees and expenses arising from its “violation of any provisions of this Lease.” Similarly, under Paragraph 21(g), “If Lessee shall be in default in the observance or performance of any provision of this Lease, and an action shall be brought for the enforcement thereof in which it shall be determined that Lessee was in default, Lessee shall pay to Lessor all... attorneys’ fees and expenses.” The court’s determination that Mass. LNG does not have the right to exercise its purchase option under Paragraph 17(f) is not equivalent to a determination either that Mass. LNG violated any provisions of the Lease as provided in Paragraph 13(a)(ii), or that Mass. LNG is in default as contemplated in Section 21 (g). As such, INLC’s request for an award of attorneys fees and expenses is denied.
ORDER
For the foregoing reasons, it is ORDERED that the Motion for Partial Summary Judgment Submitted by Industrial National Leasing Corporation is ALLOWED as to Counts I, II, and III ofMass. LNG’s complaintand as to Count I of INLC’s counterclaim.
It is also ORDERED that INLC’s request for attorneys’ fees and expenses in connection with these proceedings is DENIED.