Botsford, J.
The plaintiffs, Harrison L. Moore, Charles L. Moore, Jr., and Elizabeth Moore, as Trust *265 ees of the 24 Ledgewood Road Realty Trust ("the Trustees”), brought this action against the defendants, Robert S. Galante and Cheryl A. Galante (“the Galantes”), for declaratory judgment (Count I), breach of contract (Count II), and specific performance (Count III). The Galantes brought a counterclaim against the Trustees for declaratory judgment (Count I), declaratory judgment (Count II), and specific performance (Count III). Presently before the court is the Trustees’ motion for summary judgment on all counts of the Galantes’ counterclaim.
For the reasons set forth below, the Trustees’ motion for summary judgment is denied, and pursuant to Mass.R.Civ.P. 56(c), summary judgment is granted for the Galantes.
BACKGROUND
The following facts are generally undisputed for purposes of the summary judgment motion. On November 13, 1998, the Trustees, as “seller,” and the Galantes, as “buyer,” entered into a purchase and sale agreement (“the Agreement”) for the sale of a house lot on property in Winchester, Massachusetts (“the town”). The house lot is a portion of a larger piece of property owned by the Trustees, who intended to create a small, residential subdivision on the remaining property.
At the time the Agreement was executed, the boundary lines for the Trustees’ proposed subdivision lots were not definite and the subdivision plan was not yet approved by the town. To allow for the town’s future approval of the subdivision plan, the Trustees and the Galantes included an option in the Agreement for a post-closing exchange of property (“the exchange option”), codified in Paragraph 40 (“Paragraph 40”).[4] The exchange option, if exercised, would require the Galantes and the Trustees to swap a portion of the Galantes’ property east of their house for a portion of the Trustees’ property located north of the Galantes’ house.[5]
The property to be conveyed to the Galantes under the Agreement, absent exercise of the exchange option, is depicted in an unrecorded plan attached as Exhibit “A” to the Agreement. Attached as Exhibit “B” to the Agreement is a plan purporting to show the boundaries of the Galantes’ property should the exchange option be exercised by the Trustees.
In describing the exchange option, Paragraph 40 provides in part: "The BUYER acknowledges that the location of the boundaries shown on Exhibits ‘A’ and ‘B’ may change during the approval process.”[6] Paragraph 40 further provides that the exchange option survives the conveyance of the deed as part of Paragraph 40: ”[t]he provisions of this Paragraph 40 shall survive the deliveiy of the deed and shall be binding upon the BUYER’S successors and assigns.” The Agreement also includes an integration clause, codified in Paragraph 27.[7]
On December 11, 1998, the closing took place. The Galantes were present at the closing, along with their attorney and an attorney for the Trustees. H the closing, the Trustees requested that the Galantes execute a Notice of Option, pursuant to the last sentence of Paragraph 40, to be recorded with the Middle-sex County Registry District of the Land Court: the Galantes did so. The Registry District would not accept the Notice of Option, however, because the property subject to the exchange was not then shown on an approved Land Court plan.
In October 2000, the Trustees gained approval for a four-lot subdivision. According to the Galantes, the subdivision plan the Trustees presented to the town did not include the Galantes’ lot as depicted on Exhibit “A” or Exhibit “B” to the Agreement, but rather set out different boundaries for the lot.[8] Following the town’s approval of their subdivision plan, the Trustees attempted to exercise the exchange option pursuant to Paragraph 40 and sent the Galantes on November 14, 2000, a plan of land for the proposed exchange (“revised Exhibit ‘B’ ”). The Galantes refused to comply with the exchange option because the land they would receive, as shown in revised Exhibit “B,” had substantially different boundaries from those depicted on Exhibit "B” attached to the Agreement.[9] This lawsuit followed.
DISCUSSION
A. The Standard of Review
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Allstate Insurance Co. v. Reynolds, 43 Mass.App.Ct. 927, 929 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, as a result, the moving party is entitled to summary judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defend [the] motion.” Id. at 17.
B. Interpretation of the Agreement
“Interpretation of language in a written contract is a question of law for the court, and if the words are plain and free from ambiguity, they must be construed in accordance with their ordinary meaning and usual sense.” Massachusetts Mun. Wholesale Elec. Co. v. Springfield, 49 Mass.App.Ct. 108, 111 (2000) (citations omitted). See also Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45-46 (1991) (“When construing a contract, a court looks to the parties’ intent... To ascertain intent, a court considers the words used by the parties, the agreement taken *266 as a whole, and surrounding facts and circumstances’’).
“Contract language is ambiguous where ‘an agreement’s terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.’ ” Suffolk Const. Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999), quoting Fashion House, Inc. v. K mart Corp., 892 F.2d 1076. 1083 (1st Cir. 1989).
At issue between the parties is whether Paragraph 40 of the Agreement and specifically the Boundary Provision in Paragraph 40, is ambiguous. The Trustees argue that Paragraph 40 is free from ambiguity and provides: (1) that the parties agreed to exchange land at a future date, as shown in Exhibit “B”; and (2) that the parties also agreed that the land exchanged might not exactly match the land in Exhibit “B.” As interpreted by the Trustees, the land exchanged could have boundaries of any shape (see revised Exhibit “B”), so long as the resulting lot met the town’s zoning requirements. Since the contract language is unambiguous, the Trustees argue, the interpretation of the contract is a matter of law for the court to decide.
The Galantes respond that summary judgment is not appropriate because Paragraph 40 is ambiguous, creating a dispute of material fact as to its meaning. In particular, the Galantes’ understanding of Paragraph 40 is that if the Trustees were to exercise the exchange option, the Galantes would receive the land as shown on Exhibit “B,” because the exchange option was premised on the Trustees’ submitting to the town a subdivision plan that drew the Galantes’ lot boundaries in accordance with either Exhibit “A” or Exhibit “B.” As interpreted by the Galantes, the exchange option is essentially limited to the land with the boundaries shown in Exhibit “B”; the Boundary Provision merely enforces the parties’ agreement to effect a possible future land exchange from Exhibit “A” to Exhibit “B,” not an exchange from Exhibit “A” to whatever version of Exhibit “B” the Trustees might choose to submit to the town for approval, so long as the Galantes’ lot complied with the town’s zoning requirements.
I agree with the Galantes that there is ambiguity in Paragraph 40. Paragraph 40(a) and 40(b) are very precise in their direction that if the exchange option is exercised, both parties are to take all necessary steps to ensure that the Galantes’ lot conforms to the plan set out in Exhibit “B” attached to the Agreement. These subparagraphs are then followed by a seemingly inconsistent sentence speaking about possible changes in boundaries to the plans set out in both Exhibit “A” and Exhibit “B.”
It is true that
[e]ven if an aspect of an agreement is informal, obscure, difficult of satisfactory interpretation, and the subject of dispute by the parties as to its meaning, a court should “so far as reasonably practicable . . . give a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties.”
Finn v. McNeil, 23 Mass.App.Ct. 367, 372 (1987), quoting Bray v. Hickman, 263 Mass. 409, 412 (1928). In this case, however, the parties’ intentions are not clear. Nevertheless, the Agreement may still be construed, because one of the two interpretations advanced by the parties is not legally valid. “The court will decline to adopt a construction of a contract that will render it illegal where a reasonable alternative construction is available.” Lowney v. Genrad, Inc., 925 F.Sup. 40, 48 (D.Mass. 1995), citing Finn, 23 Mass.App.Ct. at 371; see also Dorn v. Astra USA, 975 F.Sup. 388, 392 (D.Mass. 1997) (contracts in general will not be interpreted so as to render them illegal).
A contract should be interpreted so as to make it a valid and enforceable undertaking rather than one of no force and effect. See Finn, 23 Mass.App.Ct. at 372 (contract in question a purchase and sale agreement). See also Lafayette Place Assoc. v. Boston Redevelopment Auth., 427 Mass. 509, 517 (1998).
C. Purchase and Sale Agreement Requirements
“In order to make a valid conveyance of land, it is essential that the land itself, the subject of the conveyance, be capable of identification, and, if the conveyance does not describe the land with such particularity as to render this possible, the conveyance is absolutely nugatory.” McHale v. Treworgy, 325 Mass. 381, 385 (1950) (citations omitted). This rule for conveyance applies to purchase and sale agreements, see Michelson v. Sherman, 310 Mass. 774, 778 (1942) (to sátisfy the Statute of Frauds, the purchase and sale agreement must contain a description of the land sold that applies to one parcel of land only), as well as to option provisions, see Lucey v. Hero International Corp., 361 Mass. 569, 574 (1972) (option was unenforceable where the location of the parcel subject to the option was left for future agreement).
In Michelson, the defendant was selling only a portion of a tract of land but failed to indicate this in the purchase and sale agreement. 310 Mass. at 777. There was “nothing in the memorandum to indicate the location of the boundary line between the land sold and the land retained by the defendants.” Id. The court was of the opinion that where “the boundaries of the land sold cannot be identified with sufficient accuracy,” the purchase and sale agreement was void. Id.
In Lucey, the defendant executed an option granting the plaintiff “an option to purchase additional land belonging to . . . [the defendant], which said land shall be Northerly of the conveyed premises and along Lenox Road as mutually agreed upon by both parties.” 361 Mass, at 570. The master in the case found that the words “as mutually agreed upon by both parties” were *267 inserted to prevent the possibility that land chosen by the plaintiff "would destroy the value of the residue of the land” owned by the defendant. Id. at 570-71. The court was of the opinion that “an agreement to enter into a contract which leaves the terms of that contract for future negotiation is too definite to be enforced.” Id. at 574-75.
Should the Trustees’ interpretation of the Boundary Provision control, the exchange option would be nugatory under Michelson and Lucey. The land shown on the plans seen in Exhibits “A” and “B” was, at the time of the execution of both the Agreement and the deed, capable of identification by virtue of being shown on a plan with angle, location and footage measurements. Revised Exhibit “B,” on the other hand, did not exist at the time of the execution of the Agreement. Therefore, the property described therein was thoroughly incapable of identification at the time of execution. Because, pursuant to Michelson and Lucey, land must be capable of identification at the time of the execution of the purchase and sale, the Boundary Provision cannot be interpreted to control since it allows for post-execution boundary provisions that were inherently incapable of being identified at the time of execution.
Since the court should interpret the Agreement “so as to make it a valid and enforceable undertaking rather than one of no force and effect,” see Finn, 23 Mass.App.Ct. at 372, the Boundary Provision cannot control or affect the exchange option. Thus, should the Trustees choose to exercise the exchange option, they will be limited to an exchange of property resulting in the Galantes owning the land described in the plan at Exhibit “B.” Accordingly, pursuant to Mass.R.Civ.P. 56(c), summary judgment is granted for the Galantes.
ORDER
For the foregoing reasons, Summary Judgment is granted for the Galantes. It is therefore ordered that a declaration enter, declaring that the Galantes are entitled to the land described in Exhibit “B” to the Agreement, in the event that the Trustees chose to exercise the exchange option.
As the court has interpreted the contract, the Trustees have the choice of whether they exercise the exchange option detailed in Paragraph 40 of the Agreement.

 Paragraph 40 of the Agreement provides as follows:
40. The BUYER acknowledges that the SELLER plans to subdivide other premises owned by the SELLER adjacent to the premises to be conveyed to the BUYER. If at any time prior to December 11, 2005, the SELLER shall obtain the necessary final approvals to so subdivide their adjacent property, then the BUYER and SELLER agree that upon ten (10) days’ written notice from the SELLER to the BUYER:
(a) the BUYER shall convey to the SELLER, for consideration of $1.00, the area necessary to make the premises conform to the boundaries shown on Exhibit “B” attached hereto and entitled “Plan of Land ‘B’ and
(b) the SELLER shall convey to the BUYER, for consideration of $1.00, the area necessary to make the premises conform to the boundaries shown on Exhibit ‘B’ attached hereto and entitled “Plan of Land ‘B.’ ”
The BUYER acknowledges that the location of the boundaries shown on Exhibits “A" and “B” may change during the approval process. The SELLER agrees, however, that after the conveyances as described immediately above, the BUYER’S property shall comply with the Zoning By-law of the Town of Winchester and will not violate existing property covenants.
The provisions of this Paragraph 40 shall survive the delivery of the deed and shall be binding upon the BUYER’S successors and assigns. The SELLER shall have the right, however, to terminate the provisions of this Paragraph 40 by written notice to the BUYER.
The BUYER and SELLER further agree that upon the request of the SELLER, the parties shall execute an instrument in recordable form which sets forth the terms of this Paragraph 40.

 Under the terms of the Agreement, the option expires December 11, 2005.

 See note 4 above. For simplicity, this sentence will be referred to as “the Boundary Provision.”

 Paragraph 27 of the Agreement provides as follows:
27. CONSTRUCTION OF AGREEMENT This instrument . . . sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, . . . and may be can-celled, modified or amended only by a written instrument executed by both the SELLER and the BUYER . . .

 The statement in the text may represent a disputed issue of fact, but that is not clear from the summary judgment papers.

 The Galantes assert, without apparent dispute, that before the Agreement was signed the Trustees had actually proposed the revised Exhibit “B” to them as what the Galantes would receive if the exchange option were to be exercised, and the Galantes had specifically rejected this proposal.